O’NIELL, Chief Justice.
 

 This suit was brought as an action to establish title to real estate. The action is provided for in Act No. 38 of 1908, for cases where two or more persons claim the same land by recorded title and no one has actual possession of it. The plaintiffs here claim 757/1470 interest in about 500 acres of swamp or timber land in what is called the Rio Hondo Claim No. 251, containing 632.78 acres. The defendants did not take exception to the form of action, but in their answer claimed that they were then and had been for more than thirty years continuously in actual possession of the land as the exclusive owners of it. The plaintiffs and the defendants both pleaded the prescription of ten years and of thirty years, and the defendants urged also two pleas of estoppel; all of which pleas were tried with the -merits of the case. The judge, after hearing the evidence, overruled the
 
 *1078
 
 pleas of prescription and estoppel and gave judgment for the plaintiffs recognizing them to be the owners of the 757/1470 interest in the land. The defendants are appealing from the decision.
 

 The plaintiffs are descendants of deceased sons and daughters of Eliza Milhomme LeBleu, issue of her marriage with Arsene LeBleu, and claim title by inheritance from her. She bought the land described as the Rio Hondo Claim No. 251, containing 632.78 acres, from the succession of her husband, Arsene LeBleu, at ' a sale made by the administrator of his succession on August 29, 1853. The plaintiffs aver that Arsene LeBleu acquired the Rio Hondo Claim No. 251 by written assignment from Martha Andrus some time before or about February 21, 1824. The defendants, in a preface to their answer to the suit, asked for oyer of the alleged assignment from Martha Andrus to Arsene LeBleu. The plaintiffs answered that the assignment was in the hands of the defendants if it had not been lost or destroyed, and that ample and competent secondary evidence that there was a written assignment would be adduced on the trial of the case if the original instrument could not be located. The most important question in the case is whether the judge was right in his finding that there was sufficient proof that Martha Andrus made a written assignment of the Rio Hondo Claim No. 251 to Arsene LeBleu. Her claim was recommended for confirmation in a report of the Register and Receiver of the United States Land Office at Opelousas on November 1, 1824 (American State Papers, Yol. IV, p. 71), and the claim was confirmed by Act of Congress of May 24, 1828, 6 Stat. 382. In the report of the register and receiver it appears that one John Clark was the first who settled upon and began clearing the land, and that in or about the year 1814 he sold his claim to Sally Andrus, who was the daughter of Martha Andrus, and from whom Martha Andrus inherited the claim. The report shows also that, about three years later, “one Arsene LeBleu, for the claimant [Martha Andrus], entered on the land, and has cultivated it ever since” —meaning up' to the date of the report, November 1, 1824. A final certificate of location was issued for the Rio Hondo Claim No. 251 in the name of Martha Andrus on December 28, 1852, in virtue of settlement and cultivation. A patent was issued to Martha Andrus “and to her heirs and assigns” on March 13, 1907. The patent was sought by — and perhaps issued at the instance of — Clara Pujo Barbe, who was a granddaughter of Arsene Le Bleu and Eliza Milhomme LeBleu, and from whom the defendants in this suit are claiming title by inheritance; they being the daughters and a granddaughter of Charvey Barbe and Clara Pujo Barbe. Martha Andrus had been dead many years when the patent was issued to her “and to her heirs and assigns”. The evidence shows that she died some time before 1830 — possibly as long ago as 1824. The patent was not at all necessary as evidence of the title of the heirs or assigns of Martha Andrus, because the Act of Congress of May 24, 1828, confirming, the claim of Martha Andrus, and the final certificate of location, dated Decern-,
 
 *1080
 
 ber
 
 28,
 
 1852, constituted a complete transfer of title from the government to Martha Andrus and to her heirs or assigns. The patent was issued under authority of the Act of Congress of December 22, 1854, U.S.R.S. Sec. 2447, U.S.C.A. Title 43, Sec. 1151, relating to claims confirmed prior to December 22, 1854. According to the Act of May 20, 1836, U.S.R.S. Sec. 2448, ..U.S.C.A. Title 43, Sec. 1152, the patent, being issued to a person who had died, inured to “the heirs, devisees, or assignees of such deceased patentee”.
 

 The defendants, as we have said, are the sons and daughters and a granddaughter of Charvey Barbe and his wife, Clara Pujo Barbe. He died on June 16, 1894, and she died on June 10, 1923. She was a daughter of Clarisse LeBleu Pujo, issue of her marriage with Amadee Pujo. Clarisse LeBleu Pujo was a daughter of Eliza Milhomme LeBleu, issue of her marriage with Arsene LeBleu. Therefore, if the plaintiffs are the owners by inheritance of the 757/1470 interest which they claim, the defendants, together with five other LeBleu heirs, who did not join in this suit, are the owners by inheritance of the remaining 713/1470 interest in the land. The title to the 713/1470 interest in the land, of course, is not in contest in this suit. It is only the 757/1470 interest claimed by the plaintiffs that is in contest. The defendants, however, do not claim title by inheritance — directly or indirectly — from Eliza Milhomme LeBleu, who bought the 632.78 acres described as the Rio Hondo Claim No. 251 from the succession of her husband, Arsene LeBleu, on August 29, 1853. The defendants claim by inheritance from Clara Pujo Barbe, widow' of Charvey Barbe, the whole of the land, of which the plaintiffs claim the .undivided 757/1470 interest. Clara Pujo Barbe was the mother of all but one of the defendants and was the grandmother of that one. Charvey Barbe made a credit sale of this and other land to his wife, Clara Pujo Barbe, on March 28, 1885. The defendants contend that this sale was in fact a dation en paiement by the husband to the wife and that, as such, the transfer was valid, even though it was made in the form of a credit sale. Notwithstanding this transfer from Charvey Barbe to his wife was on record, the land was listed on the inventory of his estate as community property, at the time of his death, June 16, 1894. In a division of the estate of Charvey Barbe, in consequence of a partition suit, the land which is in contest in this suit was allotted to the widow, Clara Pujo Barbe, as a part of her share of the community property. Charvey Barbe had bought the land, with 485 acres adjoining, at the probate sale of the estate of Francois LeBleu, deceased, on November 6, 1867. Francois LeBleu bought from the succession of his sister, Catherine Evelina LeBleu Brashear, deceased, wife of Thomas B. Brashear, the 632.78 acres of land described in the deed as the Rio Hondo Claim No. 251 confirmed to Martha Andrus by final certificate dated December 28, 1852. The sale to Francois LeBleu was made by the sheriff as auctioneer and the deed was signed by Thomas B. Brashear as administrator of his wife’s succession, on June 25, 1859.
 
 *1082
 
 Francois LeBleu was one of the sons, and Catherine Evelina LeBleu one of the daughters, of Arsene LeBleu and Eliza Milhomme LeBleu. The defendants do not trace their title back further than to this sale made by Thomas B. Brashear as administrator of the estate of his wife, ■Catherine Evelina LeBleu Brashear, to her brother, Francois LeBleu, on June 25, 1859. The defendants do not aver that there was ever a transfer of title from Martha Andrus, or from Arsene LeBleu, or from his widow, Eliza Milhomme LeBleu, who bought the land from the succession of her husband, Arsene LeBleu, on August 29, 1853. The defendants claim merely that they are in possession of the land under the title which they have set forth and therefore that this is in fact a petitory action, notwithstanding the plaintiffs have characterized it as an action to establish title, under the provisions of Act No. 38 of 1908. The defendants therefore rely upon the fact that the plaintiffs cannot produce a written assignment or written transfer from Martha Andrus to Arsene LeBleu, and upon the doctrine that a plaintiff in a petitory action must depend upon the strength of his own title and not upon the weakness of the defendant’s title.
 

 Aside from the pleas of prescription and estoppel, the only question in the case is whether the plaintiffs have furnished sufficient proof that there was a written assignment of the Rio Hondo Claim No. 251 by Martha Andrus to Arsene LeBleu. The proof consists of a number of facts or circumstances, not one of which would be sufficient in itself, but the tout ensemble of which is very convincing that there was such an assignment. In the first place the United States Deputy Surveyor, Thomas Bilbo, who first surveyed and made a plat of the land comprised in the Rio Hondo Claim No. 251, declared in his proces verbal, which appears as the legend on the plat, and over his official signature, that the land was “Surveyed for Arsene LeBleu Assignee of Martha Andrus.” The survey and proces verbal were made on July 11, 1836, and have been on file as public records in the United States land office ever since that date. And the endorsement made on the document by the United States Deputy Surveyor, in three lines, is in these words : “Arsene LeBleu — Assignee of Martha Andrus — Plat of Land.” There is no order from the 'general land office, on file in the local land office, or elsewhere, directing the United States Deputy Surveyor, Bilbo, to make the survey; but the plat of the survey is almost exactly the same as that which forms the basis of the final certificate that was issued on December 28, 1852 — long after the death of Martha Andrus. The only difference in the two surveys consists of some slight adjustments that were necessary to reconcile the area and the outlines of the claim with those of the adjacent claims. There is no reason to believe that the United States Deputy Surveyor, Bilbo, did not have before him when he made the survey the evidence necessary to justify the declaration over his official signature that Arsene LeBleu was the assignee of the claim of Martha Andrus.
 

 Another fact which the plaintiffs cite as evidence that the Rio Hondo Claim No. 251 was assigned by Martha Andrus to
 
 *1084
 
 Arsene LeBleu is that the claim was listed as the separate property of the estate of Arsene Le Bleu on the inventory filed in his succession on July 14, 1853. Francois LeBleu, who was the eldest son of Arsene LeBleu and Eliza Milhomme, was the administrator of his father’s succession, and in that capacity he sold to his mother on August 29, 1853, the 632.78 acres of land described as “confirmed to Martha Andrus, December 28th, 1852”. A few years after-wards, that is, on June 25, 1859, Francois LeBleu, for himself, bought the same 632.-78 acres from the succession of his deceased sister, Catherine Evelina LeBleu Brashear; and it is to that sale that the defendants in this suit-trace their chain of title. Francois LeBleu knew, when he bought the land from the succession of his sister,, that the title had passed to his mother, Eliza Milhomme LeBleu, because, he, as administrator of the succession of his father, had sold the land to his mother less than six years before. The defect, or missing link, in the defendants’ chain of title is that they do not offer to prove and do not even allege that there was a transfer of title from Eliza Milhomme LeBleu to Francois LeBleu, from whom the defendants claim title.
 

 Another fact which tends to prove that there was a written assignment of the Rio Hondo Claim No. 251 by Martha Andrus to Arsene LeBleu is
 
 the fact that
 
 in a suit entitled LaCaze v. Barbe, No. 14,-059 of the docket of
 
 the
 
 district court for the parish of Calcasieu, in which the plaintiffs there claimed an interest in the Rio Hondo Claim'No. 251 by inheritance from Martha Andrus, these same defendants alleged in their answer to that suit that Martha Andrus had made an assignment of her claim to Arsene LeBleu. In their answer to the present suit the defendants point out that the reason why the plaintiffs in the suit of LaCaze v. Barbe lost their case was that they, being irregular heirs, failed to accept the succession of Martha Andrus within thirty years, as required by article 1030 of the Civil Code; hence the allegation in the answer to that suit that Martha Andrus had assigned her Rio Hondo Claim No. 251 to Arsene LeBleu was' not ne.cessary to the defense of the suit and therefore cannot have the effect of an estoppel against the defendants in this suit. That is true; but the declaration that Martha Andrus had assigned her Rio Hondo Claim No. 251 to Arsene LeBleu was an important judicial declaration made in defense of the LaCaze suit; and, although the judicial declaration in such a case does not have the effect of an estoppel, according to article 2291 of the Civil Code, because it served no purpose in the suit in which it was made, it carries- some weight as evidence of the truth of the declaration, according to the ruling in Farley v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, L.R.A.1915A, 200, Ann.Cas.1915C, 717.
 

 Another fact which tends to confirm the proofs that Martha Andrus assigned the Rio Hondo Claim No. 251 to Arsene LeBleu is that, in a letter written by a law firm representing Mrs. Clara Pujo ‘ Barbe, to the General Land Office, on April 7, 1898, it was said that the attorneys for Mrs. Barbe had proof that Martha Andrus had sold the Rio Hondo Claim No. 251 to Arsene LeBleu. Mrs. Barbe was the one
 
 *1086
 
 from whom the defendants in this suit claim title by inheritance. She was a granddaughter of Arsene LeBleu and Eliza Milhomme LeBleu. Her attorneys were endeavoring to have the patent issued for the Rio Hondo Claim No. 251. And in their letter to the Commissioner of the General Land Office it appears that the declaration of the attorneys that they had proof that Martha Andrus had sold the land described as the Rio Hondo Claim No. 251 to Arsene LeBleu was made in response to a request of the Commissioner that the attorneys should furnish proof that their client [Mrs. Barbe] was “the successor in interest of Martha Andrus”. The' letter from the attorneys for Mrs. Barbe is on file in the General Land Office, in the' mass of correspondence which resulted in the issuing of the patent for the 632.78 acres composing the Rio Hondo Claim No. 251 to Martha Andrus “and to her heirs and assigns”.
 

 The fact that nearly all of the conveyance records of Calcasieu parish were destroyed by a fire which destroyed the court house, on April 23, 1910, is perhaps not essential to the admissibility of the secondary evidence to prove that there was a written .assignment of the Rio Hondo Claim No. 251 from Martha Andrus to Arsene LeBleu, because it is likely that the assignment was never a part of the conveyance records of Calcasieu parish. We concur in the finding of the judge of the district court that there is sufficient proof that there was such an assignment.
 

 Our conclusion that the plaintiffs own the 757/1470 interest in the land by inheritance makes it unnecessary to consider their pleas of prescription, except so far as their acts of possession may have affected the defendants’ pleas of prescription, by depriving their possession of the character of an exclusive possession. The only acts of possession on the part of the plaintiffs consisted of getting out timber, fence rails and cross ties. These operations were conducted by Joseph LeBleu, for himself and the coheirs of Eliza Milhomme LeBleu, from the time of her death, about 1880, until Joseph LeBleu’s death, about 1913. But the operations were not conducted continuously, or even annually, but only in times of high water, and at intervals which were sometimes several years apart. Although such acts of possession would not be sufficient to sustain a plea of prescription if the plaintiffs needed it, these acts prevented similar but more extensive acts of possession on the part of the defendants from being evidence of an exclusive possession, or adverse possession, especially after the death of Eliza Milhomme LeBleu; because by her death the plaintiffs and the defendants became co-owners of the land — the plaintiffs owning the 757/1470 interest, and the defendants (together with the five coheirs who did not join in this suit) owning 713/1470 interest in it.
 

 Charvey Barbe’s possession of the land, and after his death such possession as the defendants had, was similar to that of Eliza Milhomme LeBleu and of her heirs, represented by Joseph LeBleu; except that the acts evidencing possession on the part of the Barbes were more extensive than those of Joseph LeBleu. The
 
 *1088
 
 defendants in their answer to the suit aver, in support of their pleas of prescription, that the logging operations by which their parents had possession of the land commenced in or about the year 1885 and continued until about the year 1916. According to the testimony, a man named Máteme cut and hauled timber from the land under a contract with Charvey Barbe in 1884 or 1885. Materne built a camp or shack which the swampers occupied, and a pen in which the oxen that hauled the timber were kept. There were as many as six and possibly as many as ten men employed in the swamp; but there is no proof as to how long these operations continued. Other men under contract with Charvey Barbe got out timber from the land in 1893 and 1894; and, after the death of Charvey Barbe, similar logging operations were had by other men. under contract with a son representing the heirs of Charvey Barbe in 1896 and in 1908, and again in 1911. The land was surveyed for Charvey Barbe in 1887 or 1888, and for his heirs in 1911, and in 1918, and again in 1938. But the land was never fenced or enclosed in any way. It is a low swamp along the Calcasieu river and is subject to overflow, all but a comparatively small ridge in one corner of the tract. No one has ever resided on or cultivated any part of the land since the days of Martha Andrus and Arsene LeBleu, — except that the swampers occupied the shack and the oxen the bull pen, when they worked in the swamp, in 1884 or 1885. The defendants granted an oil and gas lease on the land in 1926, and in that year or the next year the lessee drilled a well which turned out to be a dry hole; and on his abandonment of the lease the defendants granted another lease to another party. But the defendants, in their answer to the suit, do not claim that these oil and gas leases and drilling operations added any support to their pleas of prescription. This suit was filed on March 11, 1937. The ownership of a tract of land not fenced or enclosed in any way cannot be acquired by the prescription of thirty years by the exercising of merely temporary and occasional acts of possession of only a part of the land, as, for example, by the occasional felling and removing of timber from the land. And the reason for that is that the prescription of thirty years cannot prevail beyond the area of land actually possessed or occupied by the party pleading the prescription. Rev.Civ.Code, art. 3503; Prevost’s Heirs v. Johnson, 9 Mart., O.S. 123; Ellis v. Prevost, 19 La. 251; Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648; Continental Land & Fur Co. v. Lacoste, 192 La. 561, 188 So. 700.
 

 The defendants’ plea of prescription of ten years is founded upon the sale made by the succession of Francois LeBleu to Charvey Barbe on November 6, 1867. The sale which the administrator of the succession of Catherine Evelina LeBleu Brashear made to Francois LeBleu is not relied upon to sustain the plea of prescription. We assume that the reason for that is that, a few years before Francois LeBleu bought the land, he, as administrator of the succession of his father, sold the land to his mother, Eliza Milhomme LeBleu; hence there is reason to doubt that Fran
 
 *1090
 
 cois LeBleu believed that his sister Catherine owned the land. Good faith is an essential element in the plea of prescription of ten years, under articles 3478 and 3479 of the Civil Code. There are other transfers in the defendants’ chain of title which might be considered in connection with their plea of prescription of ten years, even though otherwise these transfers would not cure the defect in their title. For example, Charvey Barbe sold the land to a man named Clairville Granger on September 8, 1875, and bought it back from Granger on December 14, 1881. And it appears that, through error, a portion of this land was selected by and approved to the State under the Swamp Land Grant of March 2, 1849; and was sold by the State to a man named A. Johnson on January 15, 1868; and was sold by Johnson to one William G. Kibbe on February 27, 1868, and by Kibbe to Charvey Barbe on May 14, 1869. But the approval to the State was cancelled in 1906, when it was discovered that the land so approved was embraced within the Rio Hondo Claim No. 251 of Martha Andrus.
 

 It makes no difference whether the defendants’ plea of prescription of ten years should rest only upon the original purchase of the land by Charvey Barbe from the succession of Francois LeBleu, on November 6, 1867, or also upon the sale by Barbe to Clairville Granger on December 8, 1875, and the resale by Granger to Barbe on December 14, 1881; because it is admitted that Charvey Barbe did not have possession of the land in any sense before 1884 or 1885; and it was on March 28, 1885, that Charvey Barbe made what purported to be a sale of the land to his wife. It is said in the answer to this suit that the transfer by Barbe to his wife, in the form of a sale, was made on account of paraphernal funds which Barbe owed to his wife, and hence that the transfer was in reality a dation en paiement, and, as such, was a valid transfer. The transfer was not valid in form, because it purported to be not a dation en paiement but an ordinary conventional sale of the land by the husband to his wife, for the price of $3,200, represented by two promissory notes for $1,600 each, signed by the wife, payable on January 1, 1887, and January 1, 1888, respectively, bearing interest at the rate of 8 per cent per annum, and secured by a conventional mortgage and vendor’s lien on the land. A contract of sale by a man to his wife, in which the wife incurs a personal obligation to pay the price, or any part of the price, is null. Rev.Civ.Code, arts. 1790 and 2446; Oliver v. Dayries, 23 La. Ann. 439; Heyman v. Sheriff of East Feliciana Parish et al., 27 La.Ann. 193; Carroll v. Cockerham, 38 La.Ann. 813; Rush v. Landers, 107 La. 549, 32 So. 95, 57 L.R.A. 353; Kelly v. Kelly, 131 La. 1024, 60 So. 671. Although this sale by Charvey Barbe to his wife was null on its face; Barbe regarded it as a valid transfer of title to' his wife, and thereafter he acted not as the owner of the land, but as the agent for his wife, in the dealings which are said to have constituted possession of the land. In his correspondence with the General Land Office, extending over a period of several years up to the time of his death, during which time he was endeavoring to have a patent issued for this land, he declared that
 
 *1092
 
 his wife was the owner of the land and that he was representing her in the matter. For example, in his letter to the Commissioner of the General Land office, on July 21, 1893, he declared: “My wife is the sole owner and has been for many years * * * of the tracts of land covered by Rio Hondo certificates No. 251 in the name of Martha Andrus and No. 268 in the name of John Henderson, except 160 acres belonging to another party. * * * My wife holds the original final certificate No. 268 in the name of John Henderson, and she has a certified copy of the certificate No. 251 in the name of Martha Andrus, * * * and in behalf of my wife I apply for the issuance of said patents covering the two grants above mentioned.” The defendants, in their answer to this suit, aver that the land'was transferred by Charvey Barbe to his wife by a dation en paiement, in the form of a sale, dated March 31 [should be 28], 1885. And in another paragraph of their answer the defendants aver that, when Charvey Barbe died, June 16, 1894, “the subject matter of this controversy, although standing in the name of and being the separate property of their mother, Clara Pujo Barbe, was treated as community property, and at the partition of the estate of Charvey Barbe * * * said property was partitioned and allotted to their mother as her community property.” It is plain therefore that Charvey Barbe did not acquire title to this land by the prescription of ten years, because he did not possess the land as owner, after March 28, 1885, but possessed' it as the agent for his wife — so far as he possessed it at all. The first one of the essential elements of the possession that is necessary to acquire title by the prescription of ten years, as enumerated in article 3487 of the Civil Code, is “1. That the possessor shall have held the thing in fact and in right, as owner”. And Mrs. Barbe did not acquire title by the prescription of ten years, because the title under which her husband claimed possession for her was not valid, either in fact or in form. The first one of the essential elements of a so-called “just title”, which is necessary to sustain the prescription of ten years, according to article 3486 of the Civil Code, is “1. That the title be valid in point of form”. The only subsequent muniment of title of the defendants, or of Clara Pujo Barbe — if it may be called a muniment .of title — is the act of partition in which this land was allotted to Mrs. Barbe, on April 8, 1895. That act, of course, is not cited to support the plea of prescription of ten years, because it is well settled and recognized that an act of partition, .being only declaratory of the title of the parties, and not translative of title, cannot serve as a basis for the prescription of ten years. Kernan v. Baham, 45 La. Ann. 799, 13 So. 155; People’s Bank of New Orleans v. David, 49 La.Ann. 136, 140, 21 So. 174; Pearce v. Ford, 124 La. 851, 50 So. 771; Tillery v. Fuller, 190 La. 586, 182 So. 683; Tyson v. Spearman, 190 La. 871, 183 So. 201.
 

 It appears that Charvey Barbe paid the taxes on this land from the time when he bought it from the succession of Francois LeBleu until his death, and that one of his sons, who is a defendant in this suit, paid the taxes afterwards, up to the time of the trial of this suit The plain
 
 *1094
 
 tiffs did not pay taxes upon their interest in the land. But the payment of the taxes by the defendants is not enough to sustain either of their pleas of prescription, beside the other facts which we have stated. Our conclusion on this subject is that the judge of the district court was right in overruling the defendants’ pleas of prescription of both ten and thirty years.
 

 One of the two pleas of estoppel 'filed by the defendants is urged against the claim of only four of the plaintiffs. They are the son and three of the four daughters of the deceased Joseph LeBleu, who was a son of Arsene LeBleu and Eliza Milhomme LeBleu. The defendants plead that the heirs of Joseph LeBleu are estopped from claiming an interest in this land by inheritance from him because, in the partition suit which one of the daughters of Charvey Barbe and Clara Pujo Barbe brought against her mother and her co-heirs, and which resulted in the allotment of this land to the widow Clara Pujo Barbe, Joseph LeBleu was appointed and served 'as tutor ad hoc for a minor child of Charvey Barbe and Clara Pujo Barbe, and in that capacity signed the act of partition. The defendants contend that Joseph LeBleu, by approving and 'signing the allotment of this land to Clara Pujo Barbe, virtually disclaimed having an interest in it. This plea of estoppel is not well founded because Joseph LeBleu, in approving the act of partition, acted not for himself but only in his official or fiduciary capacity, and there is no proof that he knew that he was dealing with property in which he personally had an interest. None of this land was allotted to the minor child for whom Joseph LeBleu acted as tutor ad hoc. An essential element of the plea of estoppel is that the party against whom — or against whose heirs — it is pleaded must have had knowledge of the facts when he com.mitted the act which is said to have es-. topped him. Wells v. Blackman, 121 La. 394, 46 So. 437; Bayard v. Baldwin Lumber Co., 157 La. 994, 103 So. 290; Parker v. Ohio Oil Co., 191 La. 896, 186 So. 604; Wadley v. Gleason, 192 La. 1052, 190 So. 127.
 

 The other plea of estoppel filed by the defendants is invoked against only three of the plaintiffs. ■ They are the granddaughter and the two grandsons of Catherine Evelina LeBleu Brashear, who was a daughter of Arsene LeBleu and Eliza Milhomme LeBleu. The defendants contend that the three Brashear -heirs are es- • topped from prosecuting this suit because their grandfather, Thomas B. Brashear, acting as administrator of the succession of their grandmother, on June 25, 1859, sold the 632.78 acres of land now in contest to Francois LeBleu. It is said that there was an implied warranty of title, if not an express warranty, on the part of the succession of Evelina LeBleu Brashear, to defend the title to this land. The reason why there is no evidence of an express warranty is that the original deed and the record of it were destroyed by the fire that destroyed the court house, on April 23, 1910. The instrument that was introduced in evidence is only an extract taken from the record by a title guaranty company. The plea of estoppel is an attempt to apply the rule which was recognized first in Stokes v. Shackleford, 12 La. 170,
 
 *1096
 
 and which has been affirmed many times, that an heir who accepts unconditionally the succession of his ancestor is estopped to claim from a third party property which the ancestor sold under a warranty of title. The rule never has been applied to a judi- ■ cial sale, or to any other than a private ' conventional sale, as far as we know. It is : declared in article 2624 of the Civil Code that all the warranties to which private sales are subject exist against the heir in judicial sales of the property of successions. But we believe that this article ought to be construed in connection with article 2621 of the Civil Code and article 711 of the Code of Practice, which provide that if a buyer of property sold under execution is evicted by a third party owning the property the buyer has an action of warranty against the debtor and the creditor, but only for reimbursement of the price which he paid. Therefore, it seems that when property supposed to belong to a succession is sold to pay the debts of the succession, and the proceeds of the sale are paid to the creditors, the obligation in warranty of'the heirs of the succession, as well as the obligation of the creditors who are paid, ought to be limited to reimbursement of the price for which the property was sold. It was virtually so declared in Tessier v. Roussel, 41 La.Ann. 474, on page 482, and 6 So. 542 on page 544. The sale that was made in the succession of Catherine Evelina LeBleu Brashear was made by the sheriff as auctioneer, under an order of the probate court. There is no suggestion that the sale was made for any other purpose than to pay the debts of the succession. The price of the sale of the 632.78 acres of land was $550. But a sufficient reason for our holding that the three Brashear heirs in this case are not bound in warranty by the sale made in the succession of their grandmother to Francois LeBleu is that these Bras-hear heirs never have accepted the succession of their grandmother, as far as this record shows. They declare in their petition in this suit that they claim title by inheritance from their great-grandmother, Eliza Milhomme LeBleu, who died in or about the year 1880. And they claim by representation of their -father, Thomas Brashear, Jr., who was the only child of Catherine Evelina LeBleu Brashear — and by representation of her, who died sometime before June 25, 1859. It is doubtful whether these Brashear heirs, who are plaintiffs in this suit, were born before June 25, 1859, when Francois LeBleu bought this land from the succession of their grandmother. Children do not have to be heirs of their father or mother in order to inherit by representation from their grandfather or grandmother. Rev. Civ.Code, art. 900. By the same token grandchildren do not have to be heirs of their grandfather or grandmother in order to inherit by representation from their great-grandfather or great-grandmother.
 

 The judgment is affirmed.
 

 FOURNET, J., absent.