65 So.2d 131

### CHILDERS v. HUDSON.

No. 38367.

April 27, 1953.

C. B. Prothro, Shreveport, for defendant-appellant.

James S. Peters, Tooke & Tooke, Shreveport, for plaintiff-appellee.

MOISE, Justice.

This action was brought in April, 1944, by James E. Childers, who claimed to be the owner of approximately 70 acres of ground described as follows, located in Bossier Parish, to-wit:

"Fractional Southeast Quarter of the Northeast Quarter, North of Old River, and East Half of Northeast Quarter, of Northeast Quarter, and fractional Northeast Quarter of Southeast Quarter, North of Old River, all in Section Seventeen (17), Township Sixteen (16) North, Range Twelve West, containing approximately seventy (70) acres."

Subsequent to the filing of the transcript of appeal in this Court, James E. Childers died testate at his domicile in Bossier Parish, La., and his heirs, Arthur J. Childers, Samuel R. Childers and Adolph B. Childers, have now been made parties to this appeal.

The claim of ownership is based on a counter letter allegedly from Mrs. Annie C. Hudson, the defendant, to James E. Childers.

The defendant, Mrs. Annie C. Hudson, claims ownership of the seventy acres of land by virtue of two deeds, one from A. B. Phillips for an undivided ½ interest therein, and a deed from George T. McSween for the other undivided ½ interest therein. Each deed is dated September 2, 1937, and it is shown that Mrs. Hudson paid George T. McSween $350 cash for his ½ interest, and $300 to A. B. Phillips for his ½ interest, in the property, and gave a vendor's lien note for $500 due twelve months after date, bearing 6% interest per annum from date until paid.

The counter letter upon which plaintiff's demand is based, is alleged to have been given to him by his sister, the defendant, on November 28, 1938, the property having been purchased on September 2, 1937, as above stated. It is alleged that the counter letter was given to the plaintiff's brother, S. R. Childers, for safe-keeping, and that it was destroyed by fire. A copy of the counter letter in question was produced by the Notary who confected the agreement. This counter letter reads:

"Shreveport, Louisiana
November 28, 1938

"Mr. J. E. Childers
General Delivery
Shreveport, Louisiana

"In re: Fractional SE¼ of the NE¼ North of Old River, and East one-half of

NE¼, and fractional NE¼ of SE¼, N of Old River, all in Sec. 17, TWP. 16, North Range 12 W, containing approximately 70 acres more or less.

"Dear Jim:

"This is to advise that I am holding the above described property in my name as security for Twelve Hundred ($1,200.00) Dollars indebtedness that you owe me, And that any any time the above indebtedness is paid, I will transfer by warranty deed the above described property to you or anyone that you might designate.

"Very truly yours,
(Sgd.)    Mrs. Annie C. Hudson."

The plaintiff alleges that during the period of his incarceration in the penitentiary, his sister, Mrs. Hudson, enjoyed possession of the property and received the revenues therefrom, and that he paid the purchase price therefor. The defendant claims that she purchased the property and emphatically denies the execution of the counter letter.

The record shows that on September 2, 1937, the defendant and the plaintiff entered into the following contract:

"Before Me, the undersigned authority, personally came and appeared Mrs. Annie C. Hudson, a widow, hereinafter known as the party of the first part, and J. E. Childers, married to Mary Childers, hereinafter known as party of the second part,

"Witnesseth:

"The party of the first part has this day bought the following described property:

"Fractional Southeast Quarter of the Northeast Quarter, North of Old River, and East Half of Northeast Quarter, of Northeast Quarter, and fractional Northeast Quarter of Southeast Quarter, North of Old River, all in Section Seventeen (17), Township Sixteen (16) North, Range Twelve (12) West, containing approximately Seventy (70) acres more or less, from Geo. T. McSween and Arthur B. Phillips for the price and sum of $650.00 cash, and a vendor's lien note for $500.00 due twelve months after date, with 6% per annum interest thereon.

"The party of the first part agrees and binds herself to sell to the party of the second part the above described property for $1,200.00, provided the party of the second part shall pay to the party of the first part a sum equal to $300.00 on or before twelve months from date.

"In the event that the party of the second part pays to the party of the first part the said $300.00, then the party of the first part agrees to execute a Warranty Deed to the party of the second part retaining her vendor's lien and privilege for the balance due, which preferred payment shall not exceed a period of three years.

"The party of the party of the first part is to receive 6% per annum interest in addition to the purchase price above stated.

"The party part agrees to deliver the same deed that she has this day received of Geo. T. McSween and A. B. Phillips.

"In the event of any sale of mineral rights said sum shall be applied and credited to the party of the first part on the purchase price.

"The party of the second part is hereby granted the use of said land upon his payment of the taxes and is authorized to sub-lease for his own account for agricultural purposes any of the above described property.

"Signed this the 2nd day of September, 1937, in the presence of Geo. T. McSween and Arthur B. Phillips."

While the foregoing instrument may have been phrased in terms of agreements to sell, nevertheless, it is evident from the very beginning that the property was considered to be that of the plaintiff and was merely to be held by the defendant as security for debt.

The judgment appealed from shares the above view and holds that the plaintiff is entitled to the ownership of the property, with the following modification:

" * * * this judgment shall not become executory for a period of sixty (60) days from its finality, during which period of sixty (60) days the said Mrs. Annie C. Hudson shall file an accurate and full accounting showing the amount and value of the crops of corn and cotton and other produce and other property of the said James E. Childers received and disposed of by her and through her for the year of 1940 and subsequent years and showing her claims against the said James E. Childers; and if said accounting be filed within the time herein provided this judgment shall not become executory until judgment on said accounting; and if judgment on accounting show balance due the said Mrs. Annie C. Hudson by the said James E. Childers on said real estate then this judgment shall not become executory until such judgment shall have been paid."

The evidence discloses that after entering into the above contract of September 2, 1937, the plaintiff took possession of the property. Later, he was incarcerated in the State Penitentiary. During the time of his incarceration, his sister, the defendant, and his wife, remained on the property. After his release, neither plaintiff nor defendant could agree on an accounting as to what Mrs. Hudson had expended for the property and what she had received while in possession thereof. She denied Childer's ownership of the property and refused to give him title thereto. This suit followed.

The first question which confronts this Court is:

Did a counter letter exist?

The second:

Did defendant hold as owner, subject to the contract or sale; or, did she hold the property as security for the debt?

As to the first question, S. R. Childers, brother of James Childers, testified that his brother gave the letter to him for safe-keeping and that there was an endorsement on the back of the letter to the effect that $212.25 had been paid. He said he had heard Mrs. Hudson speak of the letter. He swore that his house burned down in 1941 and that the letter was then destroyed by fire.

Arthur J. Childers, brother of James Childers, testified that he was present when the letter was drawn by Mr. Cawthorne, and that he saw Mrs. Hudson sign it.

C. B. Peters stated that he had seen the counter letter and had noted the endorsement on the back thereof.

James Childers stated that the letter was written in the presence of Arthur Childers and Mrs. Hudson. He said that the notation on the back of the letter was for money loaned to pay taxes.

Joseph T. Cawthorne testified that he had prepared the original counter letter and produced the carbon submitted in evidence.

The above evidence establishes with reasonable certainty that there was a counter letter.

Having found that the counter letter existed, we are now confronted with the consequences of its destruction by fire.

Article 2279 of the LSA–Civil Code declares that the party asserting his claim by virtue of a lost instrument, must prove the loss.

S. R. Childers testified that the letter was in his files with other papers when his house was burned in 1941 and that the letter was destroyed. There is testimony in the record to the effect that all of J. E. Childer's property was not destroyed, and that some of his furniture had been piled up in front of the burned dwelling. However, there is no testimony to the effect that the letter was not actually burned. Therefore, the record bears out the fact that the counter letter existed and must have been destroyed by fire.

It is provided in Article 2280 of the LSA–Civil Code that:

"* * * where a lost instrument is made the foundation of a suit or defense, it must appear that the loss has been advertised, within a reasonable time * * * and proper means taken to recover the possession of the instrument."

This Article, however, could not possibly apply to the instant case—because, where

was there any necessity for advertising, since the letter had been destroyed.

Did Mrs. Hudson hold the property as security for debt, is the second question to be answered.

The very testimony of defendant makes manifest that this property in question was held as security for a debt due by plaintiff, because:

Firstly, in the contract executed by the defendant and the plaintiff and introduced on trial by the defendant, we find the following provisions which controvert the contention that the instrument was a mere contract to sell:

"The party of the first part (defendant herein) is to receive 6% per annum interest in addition to the purchase price.

"The party of the first part agrees to deliver the same deed (sic) that she has this day received of Geo. T. McSween and A. B. Phillips.

"In the event of any sale or lease of mineral rights said sum shall be applied and credited to the party of the first part on the purchase price.

"The party of the second part is hereby granted the use of the land upon his payment of the taxes and is authorized to sub-lease for his own account * * *."

On the other hand, the plaintiff was to:

(a) Pay interest which accrued during interim;

(b) Receive a quitclaim or deed without warranty;

(c) Have all windfall revenues applied to the debt; and

(d) Use land and sublease for agricultural purposes *without payment of rent*.

Secondly, in a second instrument executed one year later, August 30, 1938, introduced in evidence by the defendant, we find the following language which discounts the theory that the first agreement was a contract to sell:

"* * * in which contract (referring to the above mentioned contract) the second party agreed on or before September 2, 1938, to pay to the party of the first part * * *.

"Therefore * * * and also the additional interest at the rate of 6% * * * the first party extends the payment of the aforesaid obligation due to her by the second party until December 1, 1938 when the same contract and the same terms and payments shall be due and payable with accrued interest * * *."

Thirdly, the counter letter of November 28, 1938 followed the instrument of extension evidencing the holding of the property as security.

Fourthly, an agreement entered into with H. R. Dickerson, on January 28, 1939, and introduced in evidence at the time of trial by the defendant, contains the following provision which completely refutes the concept of actual ownership in the defendant:

"* * * After the payment by said bank out of the purchase price for the said land in fee as specified in Paragraph (2) preceding this paragraph, then said bank is authorized to pay the said J. E. Childers the balance remaining of said purchase price after the payment specified. * * *"

Under the provisions of paragraph (A) of the above agreement, the defendant was to receive before any others the sum of $1,158.25. In the final settlement the plaintiff herein was to receive $3,391.75, either in cash or for payment of debt due by him.

Fifthly, on December 5, 1938, a mortgage was placed on the property in favor of the Barrow, Leary & Company, and at that time record title thereof stood in the name of the defendant. Plaintiff was required to sign the mortgage in the Dickerson agreement referred to. In paragraph 2, it was stated that the $800 was to be paid out of the portion coming to the defendant. Obviously, the Barrow, Leary loan was that of the plaintiff, and the defendant was merely interposed to assist him in mortgaging the property which both knew and intended should be the plaintiff's.

Defendant further argues that the plaintiff is precluded from bringing this action because of simulation. She cites Ackerman v. Peters, 113 La. 156, 36 So. 923. The case followed Hoffmann v. Ackermann, 110 La. 1070, 35 So. 293. Miss Ackermann was attempting to recover property allegedly purchased in another person's name to screen it from her creditors. A counter letter was not involved. There, the Court held:

"Where real estate has been conveyed to or purchased in the name of certain persons, *plaintiff, asserting ownership, cannot prove simulation* or agency, *except by a counter letter,* or by answers of defendants to interrogatories on facts and articles; and such answers cannot be contradicted by parol evidence under a charge of fraud, nor can writings insufficient per se to establish title be eked out by the testimony of witnesses. * * *" (Italics ours.)

The counter letter of November 28, 1938 sets forth the entire relationship between the parties from beginning to end and demonstrates the intention of both parties from the outset.

"I am holding the above described property in my name as security for $1200.00 indebtedness that you owe me."

The defendant has not, in law, a bush on which to hang a rag of argument on.

For the reasons assigned, it is ordered that the error in the judgment appealed from which describes the property involved as being situated in "Range Fourteen (14) West" be corrected to read "Range Twelve (12) West", and, as thus corrected, the judgment appealed from is affirmed. The defendant to pay all costs.