112 So.2d 657

Henry A. SALLIER et al.

v.

Vivian V. BOUDREAUX et al.

No. 43813.

June 1, 1959.

Rehearing Denied June 25, 1959.

King, Anderson & Swift, by Thomas C. Hall, L. Carroll Fogleman, Lake Charles, for plaintiffs-appellants.

Melvin Wetherill, Liskow & Lewis, Lake Charles, for defendants-appellees.

HAMLIN, Justice.

Plaintiffs appeal from a judgment of the trial court dismissing their suit and decreeing defendants to be the owners of certain described property located in Cameron Parish, Louisiana.

After thoroughly considering the record and the authorities, we conclude that the able trial judge has accurately stated the facts in this case and has correctly interpreted and construed the law and properly applied it, as appears from his written opinion, which we adopt:

"This is an action to set aside and to have declared null and void several quitclaim deeds executed in counterparts by plaintiffs during the years 1945 and 1946, affecting the following described property in Cameron Parish, Louisiana, to-wit: The West Half (W½) of Section Eighteen (18), Township Fourteen (14) South, Range Ten (10) West, Louisiana Meridian.

"Plaintiffs allege that the quitclaim deeds being attacked were executed by them 'in error, through lack of knowledge of the true facts of the situation, and because of (a) misleading statements, and (b) nondisclosure of the true facts of ownership' by defendants or their agents, and that plaintiffs were intentionally misled into signing the disclaimers 'by false statements.' They further contend that the consideration which plaintiffs received for these disclaimers was so negligible in comparison with the real value of their interest in the property, that the amounts so received constitute no consideration at all.

"Defendants deny the allegations of error, fraud and failure of consideration. They allege affirmatively that at the time the quitclaim deeds were executed plaintiffs owned no interest in the property, that the land was acquired by Nathaniel Vincent at a succession sale held during the year 1888, that defendants are the sole heirs of the said Nathaniel Vincent, and that as such they have inherited from him the full ownership of such property. Defendants also filed pleas of prescription of one, five and ten years and a plea of estoppel.

"The pleas of prescription and the plea of estoppel were referred to the merits and in due course the case was tried. It is now before the Court for decision on its merits.

"The land involved in this suit was patented from the State by Simeon Vincent, ancestor of both plaintiffs and defendants, on October 23, 1882. At that time Simeon Vincent was married to Tabitha Lyons Vincent, and the property therefore vested in the community which existed between them.

"Tabitha Lyons Vincent died intestate in 1887, and Simeon Vincent died intestate in 1888. At their deaths they left as their sole and only heirs seven children born to them of their marriage. Two of these children died intestate and without issue shortly after the deaths of their parents, and all

of the property belonging to their estates was inherited by their five surviving brothers and sisters, who were: Nathaniel Vincent, Henrietta Vincent Sallier, Josephine Vincent Wing, Joseph N. Vincent, and John A. Vincent.

"The defendants in the suit are all of the heirs or descendants of Nathaniel Vincent. Some of the plaintiffs are descendants of Henrietta Vincent Sallier, and the remaining plaintiffs are descendants of Josephine Vincent Wing.

"The succession of Mrs. Tabitha Lyons Vincent was never opened, but the succession of Simeon Vincent was opened in Calcasieu Parish on June 7, 1888, shortly after his death. The original succession proceedings were burned in the fire which destroyed the Calcasieu Parish Courthouse in 1910, and the only remaining record of these proceedings is an extract of them found in the records of Levingston Title Company, Inc., a corporation engaged in preparing abstracts of title to land in Calcasieu Parish, Louisiana.

"The Levingston Title Company records indicate that Nathaniel Vincent was appointed administrator of the succession of Simeon Vincent, that a succession sale was held on November 17, 1888, that a proces verbal of this sale was filed in the record of the succession and was recorded in the conveyance records of Calcasieu Parish, that an account was filed on February 1, 1889, and that this account was homologated on March 7, 1889. The Levingston records further show that a number of separate tracts of land, all located in Calcasieu Parish and belonging to the estate of Simeon Vincent, were sold at this succession sale, but these records do not indicate that the property involved in this suit, or that any property located in Cameron Parish, was inventoried as belonging to this estate or was sold at this succession sale. Mr. Kenneth Levingston, Vice President of Levingston Title Company, Inc., testified, however, that the records of that company related only to lands located in Calcasieu Parish, and that no information was included in those records relating to lands located in any other parish.

"Defendants contend that the evidence presented in this case establishes that the property here at issue was purchased by Nathaniel Vincent at the succession sale held on November 17, 1888. Plaintiffs, on the other hand, contend that the evidence does not warrant any such conclusion. If Nathaniel Vincent, in fact, did acquire the property at this succession sale, there of course would be no merit to plaintiffs' claim in this suit, and judgment would have to be rendered rejecting their demands. The first issue to be determined, therefore, is whether or not the evidence in this case establishes that the above described property was acquired by Nathaniel Vincent at that time.

"The evidence shows that from 1888 until the time this suit was instituted in 1955, this property was assessed to and all taxes were paid by Nathaniel Vincent or his heirs. The fact that it was assessed to Nathaniel Vincent immediately after the 1888 succession sale, and has been assessed to him or his heirs continuously since that time, is some indication that title to the property became vested in him at that time.

"Mrs. Sarah Ann Vincent, wife of Nathaniel Vincent, died in 1918, and her succession was opened in Calcasieu Parish during that same year, shortly after her death. The entirety of the property involved in this suit was inventoried in that succession as belonging to the community existing between the decedent and her surviving husband. Nathaniel Vincent died in 1927, and in his succession, which was opened that year, the entirety of the property involved in this suit was inventoried as belonging to his estate, and judgment was rendered placing his heirs in possession of this property. All of this, of course, is consistent with the position taken by defendants in this proceeding that Nathaniel Vincent acquired this property by purchase at the succession sale held in 1888.

"In 1942 all of the heirs of Simeon Vincent, including both the plaintiffs and defendants in this suit or their ancestors in title, executed a correction deed relating to a tract of land in Calcasieu Parish, which also had been sold by the succession of Simeon Vincent. Each counterpart of that correction deed contained the following declaration:

" 'Know All Men that the following declaration is made and executed by the undersigned heirs of Simeon Vincent, deceased, to clarify and correctly establish of record the title and ownership of the lands described herein.

" 'Whereas, *the succession of Simeon Vincent was fully and completely administered in the Probate Court of the Parish of Calcasieu during the year 1888*, in the course of which proceeding, No. 577 upon the docket of that Court, *all assets of the succession, both movable and immovable, were sold at public sale and the succession proceeding finally closed* after the homologation of the account of the administrator and a proper distribution of the remaining proceeds of such sale amongst the heirs.' (Italics added.)

"Although the land affected by that quitclaim deed is not involved in this suit, the above quoted statements contained in that deed are significant. These declarations are inconsistent with the position taken by plaintiffs in this suit to the effect that the property here at issue, which unquestionably formed a part of the assets of the Simeon Vincent estate, was not sold.

■ "The original patent from the state to Simeon Vincent affecting the property involved in this suit was found recently among the papers of Albert Vincent, a son of Nathaniel Vincent. On the reverse side of this original patent there appears in handwriting the following notation: 'S. Vincent to N. Vincent in Cameron.' A handwriting expert testified that this notation was written by Nathaniel Vincent. Although the expert was not able to determine the exact date on which it was written, he testified that it was written at a date nearer to 1901 than to 1925, and that it could have been written prior to 1901. This notation made on the original patent at such an early date, plus the fact that the patent was found among the papers of Nathaniel Vincent's son, tend further to support defendants in their claim that the property was acquired by Nathaniel·Vincent from the Succession of Simeon Vincent. It is difficult to conceive of any other reason why Nathaniel Vincent would have made such a notation on that document.

■ "Mr. Charles O. Moss, who was born in 1868, testified that he attended the public sale of property belonging to the estate of Simeon Vincent when he was about twenty years of age, that his father also was present and assisted Nathaniel Vincent in conducting the sale, and that his father told him on that day that Nathaniel Vincent 'got' the property here at issue in that sale. Counsel for plaintiffs objected to the witness relating what he had been told by his father. In view of the jurisprudence established by the Supreme. Court in Vidrine v. Deshotels, 181 La. 50, 158 So. 618, however, it appears that the testimony is proper and should be admitted.

"The evidence convinces me that Nathaniel Vincent, or his heirs, have openly held themselves out as being owners of the property here at issue from 1888 until the time this suit was instituted in 1955, a period of approximately 67 years, that since 1888 they have been generally regarded by those who were familiar with the property as the sole owners of it, and that from 1888 until this suit was instituted plaintiffs, or their ancestors in title, have asserted no claim to the property or to any interest therein.

"The quitclaim deeds, which are being attacked in this suit, were executed by plaintiffs during the years 1945 and 1946. Several of the plaintiffs have judicially alleged in this suit and have testified that at the time these quitclaim deeds were executed they did not know that they had an interest in the property here in dispute. These allegations and the testimony of the plaintiffs further tend to confirm the position taken by defendants that plaintiffs did not assert any claim to that property from 1888 until some time after the quitclaim deeds here being attacked were executed.

■ "After considering all of the evidence presented in this case I am convinced that the property here at issue was sold to and purchased by Nathaniel Vincent at the succession sale held on November 17, 1888. Although no single fact which was proved would be sufficient in itself to establish the transfer of title, all of the facts and circumstances considered together are sufficient to do so. Little v. Barbe, 195 La. 1071, 198 So. 368.

■ "Counsel for plaintiffs objected to the introduction of any evidence tending to prove the sale from the estate of Simeon Vincent to Nathaniel Vincent, on the ground (1) that such evidence would constitute an enlargement of the pleadings, and (2) that there had been no advertisement of the lost document, as required by [LSA] R.S. 44:321 and by Article 2280 of the [LSA] Revised Civil Code.

"In Articles 15 to 29 of the answer filed by defendants all of the facts on which they rely to establish the sale of this property to Nathaniel Vincent in 1888 are adequately alleged. I find no inconsistency between these allegations and the proof which was offered. There is no merit, therefore, to plaintiffs' argument that the evidence offered by defendants tending to establish the sale to Nathaniel Vincent would constitute an enlargement of the pleadings.

"[LSA] R.S. 44:321, which has as its source Act 57 of 1886, provides a procedure for obtaining service of process by publication in suits to re-establish or revive certain types of destroyed documents. Article 2280 of the [LSA] Civil Code provides that in every case where a lost instrument is made the foundation of a suit or defense, it must appear that the loss has been advertised. [LSA] R.S. 44:325, however, which also has as its source Act 57 of 1886, provides that:

" 'The provisions of this Sub-part (including [LSA] R.S. 44:321) shall not prevent the establishment of any judgment or any other instrument of writing, by parol evidence, where the original record has been destroyed by the burning of the courthouse or any other place of deposit of public records, or destroyed in any other way in the parish.'

■ "In Grotevant v. Dorrestein, 152 La. 734, 94 So. 372, and Childers v. Hudson, 223 La. 181, 65 So.2d 131, [Lyons v. Goodman, [La.App.], 78 So.2d 424], the Supreme Court held that parol evidence could be presented to establish the existence of records which had been destroyed by fire, although the loss of the documents had not been advertised. In this case, since the evidence definitely establishes that the proces verbal of the public sale held in the succession of Simeon Vincent was destroyed by the burning of the courthouse, I conclude that parol or secondary evidence

may be presented and considered to establish the existence and contents of that document even though there has been no advertisement of its loss.

■ "Plaintiffs further contend that the public sale of property belonging to the estate of Simeon Vincent is null and void because the sale was not made to pay debts. As has already been pointed out, the only records of this succession which are available are those contained in the files of Levingston Title Company. These take-offs by the abstractor show that there was an administration of this estate, that a public sale of property belonging to the estate was held, that a proces verbal of this sale was duly filed, that the administrator filed a final account, and that this account was homologated. The fact that there was an administration, and that an account was filed and homologated actually could be interpreted with some logic as indicating that there were debts due by the succession. Since there is no definite evidence to that effect, however, the record must be considered as failing to show whether debts were due or were not due by the estate of Simeon Vincent at the time of this sale. The Supreme Court has repeatedly recognized and applied the presumption of 'omnia rite esse acta' to judicial proceedings such as the sale here at issue. Thibodaux v. Barrow, 129 La. 395, 56 So. 339; Egle v. Constantin, 198 La. 899, 5 So.2d 281; and Hicks v. Hughes, 223 La. 290, 65 So.2d

603. In this case, since there is no evidence to indicate that the succession sale was made for a purpose other than that of paying debts, and since plaintiffs have permitted approximately 67 years to elapse after such sale before attacking it, I conclude that there attaches a legal presumption that the correct procedure was followed in making this sale, that the sale was made for the purpose of paying debts, and that such sale was legal. The burden rests upon the party attacking the sale, of course, to establish the facts which would have the affect of voiding such sale. Plaintiffs have failed to produce any such proof in this case.

■ "It is further argued by counsel for plaintiffs, alternatively, that the interest in this property belonging to the estate of Mrs. Tabitha Lyons Vincent, deceased wife of Simeon Vincent, was not conveyed to Nathaniel Vincent in the succession sale held in 1888. As has already been pointed out, Mrs. Vincent died in 1887, and her succession was never opened. Her husband, Simeon Vincent, died the following year, and his succession was opened a few days after his death. The jurisprudence of this state has been established to the effect that where there are community debts all of the community property can be administered and settled in the succession of the husband alone. Kremer v. Kremer, 121 La. 484, 46 So. 600; Festivan v. Clement, 135 La. 938, 66 So. 304; Fontenot v. Fontenot, 157 La. 511, 102 So. 590,

and Kelley v. Kelley, 198 La. 338, 3 So.2d 641. It has been determined, for reasons above set out, that the 1888 succession sale was made to pay debts. Ordinarily there would be no legal presumption that these were community debts, but there does attach to the succession sale the legal presumption that all things were done correctly in selling the entirety of this property. Thibodaux v. Barrow; Egle v. Constantin, and Hicks v. Hughes, supra. Since the entirety of this property was sold, and it could only be administered and sold to pay community debts, the presumption which attaches after this 67 year period is that community debts existed. Again the burden of proof rests upon those who attack the sale to prove the irregularities which they contend woud render it null. In this case plaintiffs have failed to establish that there were no community debts. I conclude, therefore, that the interest of Tabitha Lyons Vincent was administered and settled in the succession of her husband, Simeon Vincent, and that the entirety of the property involved in this suit was properly and legally conveyed to Nathaniel Vincent at the succession sale held on November 17, 1888.

"In view of the conclusions which have been reached, it is not necessary to deter-mine whether the quitclaim deeds executed by plaintiffs during the years 1945 and 1946 should be set aside or decreed to be null and void because of error, fraud or failure of consideration. Neither is it necessary to consider the pleas of prescription and the plea of estoppel filed by defendants.

"For the reasons hereinabove set out, judgment is rendered in favor of defendants and against plaintiffs, rejecting the demands of said plaintiffs, and dismissing this suit at plaintiffs' costs.

"A formal decree in accordance with the views herein expressed may be presented for signature."

For the reasons assigned, the judgment appealed from is affirmed.