(43 South. 894.)

No. 16,182.

BERGERON v. DASPIT et al.

(May 13, 1907.)

**1. VENDOR AND PURCHASER—OFFER TO SELL LAND—CONSTRUCTION.**

It is the generally accepted intention of parties (unless controlled by proof to the contrary) in selling lands that, where a vendor declares he offers to sell to his vendee a tract of 4 arpents front by 40 arpents deep, he proposes to sell, and the purchaser proposes to buy, 160 arpents of land, that is the quantity of land which would be conveyed in a parallelogram of 4 arpents by 40. The reference made in an act so worded as to its front on a particular stream is taken prima facie to have it appear that whatever might be the quantity of land in the tract its front should rest on that stream.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, § 93.]

**2. SAME—CONFLICTING CONTRACTS.**

Where after a sale has been made by a vendor of part of his plantation, in which the property sold is described in the manner just stated, he makes a second sale to another person describing the property secondly sold as a tract measuring 15 arpents front on the same stream by 40 arpents being all of the plantation, except that sold to the first vendor, the second vendee should take only what remains after the prior acquired rights of the first vendee have been satisfied. He should not measure on the stream a distance of more than 15 arpents if by so doing he prejudices the legal rights of the first vendee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, § 93.]

**3. SAME—INTENT OF PARTIES.**

The actual intention of the parties should be ascertained, if possible.

(Syllabus by the Court.)

Appeal from Twentieth Judicial District Court, Parish of Terrebonne; Louis P. Caillouet, Judge.

Action by Henry Bergeron against O. C. and H. C. Daspit. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Butler & Bourg, for appellants. Wallis & Gagné, for appellee.

**On Rehearing.**

NICHOLLS, J. The first sale by Joseph U. Folse was one made on the 25th of January, 1905, to Oscar C. Daspit. The property sold was described in the act as "a certain tract of land situated in the Parish of Terrebonne, La., at a distance of about seven miles from and below the town of Houma, measuring five arpents front on the left bank descending the Bayou Black by the depth of 40 arpents bounded above by lands of the Waterproof plantation now belonging to John D. Minor and below by other lands of the present vendor together with all the buildings and improvements, appurtenances, privileges and advantages thereto belonging or in anywise appertaining," being a portion of the Flora plantation. There is included in the present sale two cabins which the present purchaser shall have the right to remove and have placed upon the property conveyed. The property was sold for and in consideration of the price of $1,800, represented in three notes of $600 each, payable, respectively, on March 30, 1905, June 30, 1905, and September 30, 1905, with 8 per cent. interest from date.

The second sale was made on the 30th of January, 1905, to H. Claiborne Daspit and Oscar C. Daspit.

The property sold was described as—

"A certain tract of land situated in the parish of Terrebonne at a distance of about seven miles from and below the town of Houma measuring four arpents front on the left descending banks by the depth of forty arpents bounded above by a tract of land recently sold by vendor herein to Oscar C. Daspit and below by other lands now belonging to present vendor together with all the buildings, improvements, appurtenances, privileges, and advantages thereto belonging or in anywise appertaining. Being a portion of the Flora plantation."

Having thus described the thing sold, the act proceeds as follows:

"There is included in this sale and intended to be conveyed herewith the residence belonging to said Flora plantation which it is believed a survey will prove to be on the land herein conveyed. But in case a survey should show said residence not to be located on said four arpents it shall nevertheless be the property of the vendees herein and they shall and are hereby given the right and option to purchase of the

remaining lands of the vendor a sufficient further quantity to bring and locate the line of their property down to the lower line of the yard in which said residence now stands, said purchase to be made at the rate of four hundred dollars per each arpent in width that shall be needed to bring their boundary line to the lower line of said yard, it being the intent and agreement of the parties that the vendees herein shall have the right to purchase in any event of the vendor herein sufficient to bring their boundary to the point above indicated and the said purchase price at the said rate of four hundred dollars per arpent in width shall be made payable one year from date of purchase. And the vendees herein bind and obligate themselves to purchase such quantity of land as shall be found necessary to bring their boundary line to the line of the yard above mentioned. The vendor specially reserves to himself the large stable now located upon said property together with the right and privilege to remove or demolish the same at any time within the period of two years and he and his employees shall during that time have full and free access to the premises for the purpose of such demolition or removal."

The property was sold for and in consideration of the price of $2,600—$500 cash the balance payable in nine equal installments of $200 each and one installment of $300, payable 10 years from date, all installments to pay interest at 8 per cent. from date.

On the 1st of February, 1905, J. A. Folse made a third sale of parts of the Flora plantation; this sale being made to F. Duplantis. The property sold was described as—

"A certain tract or body of land in the parish of Terrebonne in this state at about seven miles from the town of Houma on the left descending bank of the Bayou Black, measuring fifteen arpents front on said Bayou Black by a depth of forty arpents; bounded above by a tract of land recently sold by vendor to H. C. & O. C. Daspit, and below by land of Orange Grove Plantation of Albert J. Morvant, being all that portion of Flora plantation of vendor situated, lying, and being on the left descending bank of Bayou Black except the tract sold to H. C. & O. C. Daspit on Jany. 30th, 1905, and being composed of the following tracts, to wit:

"1st. A certain tract of land situated on the left bank descending Bayou Black measuring seven and one half arpents front on said Bayou by a depth of forty arpents, being part of section 56 T. 17, R. 16 E.

"2d. A certain tract of land situated on the left bank descending Bayou Black measuring four arpents front by a depth of forty arpents, being the lower half of lot 57 township 17, Range 16 East.

"3rd. Another tract of land about seven miles below the town of Houma measuring three and one half arpents front on the left descending bank of Bayou Black by a depth of forty arpents, bounded above by land of H. C. & O. C. Daspit and below by land of * * * above described, together with all and singular the buildings and improvements thereon and all rights, ways, privileges, servitudes, etc., appertaining or in any wise belonging to said property, including the Big Stable now on the tract of land sold to H. C. and O. C. Daspit which was reserved by vendor in said sale."

In a subsequent part of the act of sale it was declared that it was "understood and agreed and stipulated that the purchaser binds and obligates himself to carry out the following obligation entered into between the vendor and H. C. and O. C. Daspit, in the act of sale to them of Oct. 30th, 1905, to-wit," following which declaration is copied in full the obligation so referred to found in the reference already made herein to that obligation.

The sale to Duplantis was made for and in consideration of the price of $5,400—$500 cash, the balance of $4,900 represented by six notes, one for $500, the other five for $880, the first note maturing 90 days after date, the others, respectively, in one, two, three, four, and five years, bearing interest at 7 per cent. per annum from date.

On the trial plaintiff offered in evidence a copy of the act of sale from Folse to O. C. Daspit, copy of the act of sale from Folse to H. C. and O. C. Daspit, copy of an act of sale from Folse to Duplantis, copy of act of sale from Duplantis to himself, and a map showing the line claimed by the plaintiff as the boundary line between himself and the defendants.

Defendant offered in evidence the chain of title of J. U. Folse, the common author of both Bergeron and the Daspits, all the way back to the government. An objection made by plaintiff to this evidence was sustained. They offered in evidence the testimony of Oscar C. Daspit in writing taken by the clerk in reference to the option. This evi-

dence was objected to by plaintiff, on the ground (1) that a solemn notarial act could not be contradicted or altered by parol evidence; (2) that it contained a reply to leading questions absolutely suggesting the answer. No objection was made to these rulings, and no bills of exception were taken.

The decision in this case heretofore rendered was arrived at by a consideration of the phraseology used in the act of sale to H. C. and O. C. Daspit, by which the tract of land which was sold was described as a tract of land "measuring four arpents front on the Bayou Black," coupled with the subsequent stipulation in the act relative to the right of the Daspits in a certain contingency to buy from the vendor an additional quantity of land sufficient to bring and locate the boundary line of their property down to the lower line of the yard in which said residence now stands, and coupled with the further fact disclosed on the map that by measuring along or near the line of Bayou Black, a distance of four arpents as mentioned in the act, and running a line parallel to the recognized upper line of the tract (that is, the lower line of the Waterproof plantation), the line so drawn would pass exactly through the corner of the lower line of the residence yard. This seems to meet the exact expectation of the parties as to where the lower line should in fact be located, and presented a combination of facts which left the court, in its opinion, by reason of the rulings of the trial judge on matters of evidence very little latitude for interpretation or construction. We have examined the acts de novo, and under the situation disclosed we cannot believe that the act to Daspit, as we have read it, on its face evidences the actual intention of the parties. If we place a comma just after the words "four arpents" (in the act of sale from Folse to the Daspits), and place a second comma after the words "Bayou Black," the act would read "a tract of land measuring 4 arpents, front on the left descending bank of Bayou Black, by 40 in depth." The same result would be reached by surrounding the words which we have placed between commas by parentheses. The act would then read:

"A tract of land measuring four arpents (front on the left descending bank of Bayou Black) by forty in depth."

If we adopt that method of dealing with the intention of the parties, that intention would fall under the generally understood intention of the parties (controlled by proof of their actual intention) when selling lands that, when a vendor declares that he offers to sell to his vendees a tract of land 4 arpents front by 40 deep, he proposes to sell, and the purchaser proposes to buy, 160 arpents of land. That is the quantity of land which would be conveyed in a parallelogram of 4 arpents by 40. Ramos Lumber Co. v. Sanders, 117 La. 629, 42 South. 158, and authorities cited.

From that standpoint Oscar C. Daspit would have acquired under his purchase from Folse 200 arpents of land and H. C. and O. C. Daspit under their purchase from Folse acquired 160 arpents, or uniting the two bodies of land, as they are now united (for O. C. Daspit has bought up H. C. Daspit's interest in the second tract since the institution of this suit) the Daspits would have acquired 360 arpents. Under the plaintiff's view of the situation and under the map as drawn showing his contentions, the Daspits would have acquired only 251 arpents, a difference of 109 arpents from what they claim.

Leaving the act of sale from Folse to the Daspits, and going now to the act of sale from Folse to Duplantis (under whom Bergeron holds by purchase), we find that Folse sold to Duplantis "a tract of land measuring 15 arpents front on Bayou Black by a depth of forty arpents." To reach the result claimed by Bergeron, we would have

to disregard a line of 15 arpents measuring along Bayou Black as being the front of the Duplantis tract, and prolong it regardless of that length of line down to what he claims should be the lower line of the Daspit tracts. We must give effect of some kind, if possible, to the expression "fifteen arpents" found in the Duplantis sale. The theory on which Bergeron's claim seems to rest is that, as in the Duplantis act reference is made to the lower line of the Daspit tract as being the upper line of that of Duplantis, the latter would be entitled to carry up his front line on Bayou Black until it reached the lower line of the Daspits according to his conception of the location of that line. The sales to the Daspits were first in date. Duplantis was to take out of the Flora plantation only what remained after the prior acquired rights of the Daspits (such as they were legally) had been satisfied, no matter what his acts might call for. He was informed of the prior sales to the Daspits, and through his purchase he purchased only (as the act itself declared) the balance of the Flora plantation. We have taken into consideration de novo the stipulation contained in the act of sale from Folse to H. C. and O. C. Daspit, which is referred to throughout these proceedings as the "option" to buy. While it was a stipulation placed in the act for the purpose of bringing about certainty, it is the very thing which has brought about all the trouble in this case. We must bear in mind the clause in question is not found in the granting or conveying part of the act. What had been sold and purchased had already been provided for. The rights of both parties were already fixed. The object of the clause was to provide for what should be done in the event of the happening of a certain contingency. That contingency was the cutting off of any part of the Daspit residence yard by the direction which would be given to the lower line of the Daspit tract by a survey thereafter to be made. That contingency has never happened. Had it been, the intention of the parties to have made the fence on the lower line of the Daspit residence, the lower line of the tract, all which was required, was to say as much. They (the yard and the fence) were visible objects furnishing exact data for starting points to surveyors whose services might be called into requisition. The uncertainty contemplated as possible seems to have been as to where a line starting from the corner of the lower line of the Waterproof plantation next to Bayou Black and running perpendicularly to that line would end, and fix the starting point for the location of the lower line of the Daspit tract. The location of the lower line of the tract first sold to O. C. Daspit had not as yet (it must be remembered) been ascertained, so that the exact direction of this last line with reference to the residence yard was conjectural. The reference made in the acts as to the front on Bayou Black was intended, we think, to make it appear that whatever might be the quantity of land in the different tracts their fronts should rest on the Bayou Black. Heirs of La Branch v. Montegut, 47 La. Ann. 674, 17 South. 247.

There is so much ambiguity in the language of the acts, and so much uncertainty as to the actual rights of the parties in this case, that we do not feel we can pass upon them with full justice as matters stand. The actual intention of the parties should be ascertained if possible.

We think the proper course to pursue for the attainment of that end is to set aside the judgment of this court heretofore rendered, to annul, avoid, and reverse the judgment of the district court appealed from, and to remand the cause to the district court for further proceedings according to law, with leave to both sides to amend their pleadings and to introduce additional evidence; and it is hereby so ordered, ad-

judged and decreed, costs of appeal to be paid by appellee.

BREAUX, C. J. I concur in the decree, as I think that it is to the interest of all concerned that there should another trial be had and evidence heard, as to the dividing line between the two places, according to the real intention of the parties.

For concurring opinion of PROVOSTY, J., see 43 South. 1023.