(54 South. 413.)

No. 18,191.

MINOR et al. v. DASPIT. et al.

(Feb. 13, 1911.)

*(Syllabus by the Court.)*

1. DEEDS (§ 114*)—DESCRIPTION OF LAND.

A sale of a tract of land 4 arpents front on a bayou by 40 arpents in depth conveys 160 arpents in a parallelogram, unless the contrary intention be clearly shown by the evidence.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 316–329; Dec. Dig. § 114.*]

2. BOUNDARIES (§ 8*)—LOCATION OF LINES—DESCRIPTION OF LAND SOLD.

In such a case, the rule is to measure the breadth on the stream by a line at right angles to one of the side lines which are presumed to be parallel.

[Ed. Note.—For other cases, see Boundaries, Dec. Dig. § 8.*]

3. BOUNDARIES (§ 8*)—LOCATION OF LINES—DESCRIPTION OF LAND SOLD — "SALE PER AVERSIONEM"—SALE IN GROSS.

There can be no "sale per aversionem," unless the object be designated by the adjoining tenements, or conveyed from one fixed boundary to another fixed boundary.

[Ed. Note.—For other cases, see Boundaries, Dec. Dig. § 8.*

For other definitions, see Words and Phrases, vol. 7, p. 6309.]

4. VENDOR AND PURCHASER (§ 212*)—SALES TO DIFFERENT VENDEES—RIGHTS OF PARTIES.

Where the owner of a plantation sold portions thereof to different vendees, the first vendee will take the full quantity called for by his title, and the second will take what remains.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 212.*]

Appeal from Twentieth Judicial District Court, Parish of Terrebonne; W. P. Martin, Judge.

Action by John D. Minor and others against J. F. Daspit and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Suthon & Wurzlow, for appellants. Butler & Bourg, for appellees.

LAND, J. This is the same boundary suit which was remanded by this court for further proceedings, with leave to both parties to amend their pleadings, and to introduce additional evidence. See Bergeron v. Daspit et al., 119 La. 9, 43 South. 894. After the cause was remanded the present plaintiffs were substituted for Bergeron.

We adopt the statement of the case as set forth in Bergeron v. Daspit, supra.

J. A. Folse, the owner of the Flora plantation, situated on the left descending bank of the Bayou Black in the parish of Terrebonne, on January 25, 1905, sold to Oscar C. Daspit, a part of said plantation, measuring 5 arpents front on said bank by the depth of 40 arpents, bounded above by the lands of the Waterproof plantation, and below by other lands of the vendor.

On January 30, 1905, J. A. Folse sold to H. C. and O. C. Daspit, another part of the Flora plantation measuring 4 arpents front by the depth of 40 arpents, bounded above by the 5-arpent tract sold to O. C. Daspit, and below by other lands of the vendor.

It is stated in the last act of sale that the residence belonging to the Flora plantation was intended to be conveyed, but in case a survey should show that said residence was not located on said tract, the vendees were given the right, and bound themselves to purchase of the remaining lands a sufficient further quantity to bring and locate the line of their property down to the lower line of the yard in which said residence stood.

On February 1, 1905, J. A. Folse sold to F. Duplantis the remainder of the Flora plantation, described as measuring 15 arpents front on said Bayou Black by a depth of 40 arpents; "bounded above by a tract of land recently sold by vendor to H. C. & O. C. Daspit." Duplantis sold to Bergeron, and, pending the suit, Bergeron sold to the present plaintiffs.

The original petition was for the purpose of establishing the boundary line between the 4-arpent tract sold to H. C. and O. C. Daspit, as described in their title deed, and the remainder of the Flora plantation.

128 LA.—2

When the case was remanded, John D. Minor et al. filed an amended petition alleging their purchase from Bergeron, as per description in their deed, and that when J. A. Folse purchased the Flora plantation, it was described as having 24 arpents front on the Bayou Black, and when he sold 5 arpents front to Daspit he intended to and did sell only ⁵/₂₄ of the frontage he owned; and when J. A. Folse sold 4 arpents to the Daspits, he intended to sell and did sell ⁴/₂₄ of the frontage he owned, and when he sold to Bergeron, he intended to sell and did sell ¹⁵/₂₄ of the frontage he owned.

Respondents answered specially denying the alleged intention, and averred that the true intention of the parties is shown by the descriptions in the deeds, which call for frontage in lateral width between parallel lines, and that the option to purchase additional land, in the second sale, was a separate and distinct bargain to meet a contingency that never happened.

The cause was tried, additional evidence adduced, and there was judgment in favor of the line contended for by defendants. Plaintiffs have appealed.

Parol evidence of the intention of the parties was adduced on the trial of the cause. Daspit testified that his intention was to purchase by arpent frontage from east to west at a right angle to the side lines, and that nothing was said about twenty-fourths. Folse testified that the Daspits bought 9 arpents front on Bayou Black by two separate sales, and the property was not surveyed or measured at the time; that, when he purchased, his vendor stated that the plantation measured 24 arpents front on Bayou Black; that he decided that he should realize so much money from the proceeds of the sale, made inquiries for purchasers for the whole or a portion and sold accordingly; the sales were made to the several purchasers on the assumption that the property measured 24 arpents front on the bayou, of which frontage he sold 9 arpents including the residence to the Daspits, and then offered the balance of the property to Duplantis, stating that he had 15 arpents front on the bayou. Folse further testified as follows:

"I intended to sell to the parties who acquired 4/24, 5/24, and 15/24 of Flora plantation as stated above. I decided that the property should realize the amount and aggregate which I obtained, and the subdivision was approximately based, in so far as the land on which the residence was at value so as to include one-half of the cost of the residence. The landed property was based on the amount per acre frontage. * * * I don't say I intended to sell the plantation by twenty-fourths. I did say that I intended that the plantation should realize approximately $10,000, and having found purchasers to give the amount stated in their deeds, I decided that the balance which I had should complete the selling price upon which I decided. The land upon which the residence stood was placed at a different value, because the residence was on it, though the act did not recite the price of the residence.

"The question of twenty-fourths was not discussed. The idea of having sold by twenty-fourths was never suggested to me. * * * I intended to sell Felican Duplantis only such portion of the plantation as was left after the Daspits took what belonged to them."

We have copied this testimony for the purpose of disposing of the contention that in the sales to the Daspits the intention was to convey proportions of the whole plantation and not determinate parts thereof as stated in the acts of sale. There was no error in the description of the lands conveyed to the Daspits, but the vendor was mistaken as to the quantity of land remaining in the plantation after the sales. While the title to Folse described the plantation as fronting 24 arpents on Bayou Black, the government maps and surveys, and other titles in the chain, show 20 and ⁶⁴/₁₀₀ arpents of frontage on said Bayou.

The option to purchase additional frontage so as to include the residence and yard was never exercised, because the tract sold, when surveyed, was found to include said premises.

Whatever the shortage in the whole planta-

tion, the defendants, as first purchasers, are entitled to the quantity called for in their titles. The survey of the frontage was properly made on an east and west line perpendicular to the side line of the Waterproof plantation. See Bergeron v. Daspit, supra.

That the sale of the 4-arpent tract was not per aversionem is evident from the recitals of the deed. The sale was by measurement. Both parties believed that the measurements would include the residence and yard; but to guard against the contingency of its exclusion, it was stipulated that the vendees should have the right and option to purchase of the remaining lands at the rate of $400 per arpent, a sufficient further quantity to bring and locate the boundary line of their property down to the lower line of the yard in which the residence stood. But this contingency never happened, and the stipulation itself shows that the parties had no intention of fixing the fence as one of the boundary lines of the 4-arpent tract.

The dwelling was sold regardless of its location as to the 4-arpent tract, and the stipulation was inserted so as to enable the vendees to acquire the grounds on which the residence stood in the event the premises were not embraced within the limits of the tract. A sale per aversionem is one "from one fixed boundary to another fixed boundary, when the object is designated by the adjoining tenements." Civ. Code, arts. 854, 2495.

Judgment affirmed.

---

(54 South. 415.)
No. 18,658.
STATE v. REEVES.
Ex parte REEVES.
(Feb. 27, 1911.)

*(Syllabus by the Court.)*

1. JURY (§ 32*)—JURY TRIAL — NUMBER OF JURORS—PROSECUTION FOR SHOOTING WITH INTENT TO KILL AND MURDER.

A person tried and convicted by a jury of 12 on a charge of shooting with intent to kill and murder is illegally convicted (the jury of 12 having no jurisdiction of that crime because it is not necessarily punishable at hard labor), and is entitled to obtain his release from the penitentiary by the writ of habeas corpus, and to a trial according to law.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 221–225; Dec. Dig. § 32.*]

*(Additional Syllabus by Editorial Staff.)*

2. COURTS (§ 37*)—JURISDICTION—WAIVER OF OBJECTION.

The objection that a court has no jurisdiction of the subject-matter is not waived by plea or by going to trial, but may be raised on motion in arrest of judgment on appeal, or by petition for writ of habeas corpus.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 147–151; Dec. Dig. § 37.*]

Application of Augustus Reeves for a writ of habeas corpus. Writ made peremptory.

Hunter & Hunter and Blackman & Overton, for relator. Walter Guion, Atty. Gen. (G. A. Gondron, of counsel), for respondent.

MONROE, J. Relator alleges that he is illegally confined in the state penitentiary, and prays that the board of control of that institution be ordered to produce his body in court or show cause why he is detained. The board, through its president, answers that it is advised that the detention is legal, and it refers to a judgment of the district court for the parish of Rapides, annexed to relator's petition, and to the commitment and warrant from the court annexed to its return. The facts are that relator was prosecuted by indictment upon a charge of shooting with intent to kill and murder, a crime which under section 791 of the Revised Statutes, as amended by Act No. 43 of 1890, is punishable by "imprisonment at hard labor, or otherwise," and, under article 116 of the Constitution, must be tried by a jury of five, or, in case the jury is waived, by the judge of the district court; and that, instead of having been so tried, he was tried and convicted by a jury of twelve, a tribunal which