McBRIDE, Judge.
This is an action in boundary. Plaintiffs own the following property:
A Certain Piece or Portion of Ground, together wtih all the buildings and improvements thereon, rights, ways, servitudes, privileges and advantages thereunto belonging or in anywise appertaining, situated in the Parish of Jefferson, State of Louisiana, on the right bank of the Bayou Barataría, Barataría District, having a front of 'Ninety-seven (97') feet on Bayou Bara-taría and extending in depth between parallel lines to the Public Road.
Defendant owns the adjoining property to the south, his title deed calling for:
A Certain Piece or Portion of Ground, together with the rights, ways, privileges, servitudes, advantages and appurtenances thereunto belonging or in anywise appertaining situate in the Parish of Jefferson, State of Louisiana, on the right bank of Bayou Barataría in the District of Barataría and having a front of eighty (8CK) feet front on Bayou Barataría and extending in depth between parallel lines to the public road; said piece or portion of ground constitutes the front portion of a tract of land acquired by Octave Coulon from Victor Coulon by act before William C. Berthoud, late Notary Public in and for the Parish of Jefferson, on October 2nd, 1870, bounded on the North side by the property of the vendor herein and on the South by the property now belonging to John Perrin, and on the West by the Public Highway.
The premises in question are located in what is known as Little Village Community in Section 2, Township 16 South, Range 23 East, Southeastern District of Louisiana, West of the Mississippi River.
Plaintiffs also seek to have removed from their property certain of defendant’s improvements which encroach thereon.
The judge below pursuant to LSA-C.C. art. 841 appointed Henry E. Landry, Surveyor, to inspect the premises described in the petition, to survey the same, and to report thereon in writing to the court.
Defendant alleges in answer that he erected his fence in the month of August, 1943, and that this fence forms the correct boundary line. In a supplemental and amended answer he avers that shortly after acquiring his property, he and Mrs. Anaise Coulon Christen “measured off the fence separating his property from that of his neighbors, John Perrin and they did also measure off the eight foot right-of-way on the North boundary line by inserting three wooden posts on the North boundary line and a square wire fence eight feet south thereof; all done to the satisfaction and with the acquiescence and cooperation of Mrs. Anise Coulon Christian; and for these reasons plaintiffs did warrant title as per the boundaries so set and they are hereby *49 estopped from asserting their claim in this matter.”
Defendant also set up that a relocation of the boundary would cause confusion by disrupting and displacing the boundaries of other property in the vicinity. He prays for dismissal of the suit. Defendant also filed a reconventional demand but nothing more need be said of such incidental demand as it has passed out of the case.
In due course Landry, the court-appointed surveyor, surveyed the property and submitted a comprehensive map showing his location of the boundary line and at the same time submitted his written report. Landry’s map appears thus:

*50 Defendant disputes the correctness of Landry’s survey and bases his case entirely on a survey of J. L, Fontcuberta, Surveyor, dated April 11, 1955, which is in hopeless conflict with the Landry survey.
The court, after hearing both surveyors as well as several other witnesses on the trial of the case, concluded that defendant’s survey, i. e., the one made by Fontcuberta, “is more logical and in keeping with the existing lines of property at Lafitte,” and judgment was rendered establishing the boundary between the property of the respective parties as shown on the Font-cuberta map. Plaintiffs have appealed.
A brief history of the title and ownership of the property sought to be separated may be stated as follows:
Plaintiff, Mrs. Anaise Coulon Christen, and her late husband, John Christen, acquired (C.O.B. 44, folio 563 and C.O.B. 47, folio 475) certain lands having a continuous and aggregate frontage of 288 feet on Bayou Barataria, by a depth between parallel lines running to Lake Ouacha in the rear (a distance of 5 miles). John Christen, by several acts, disposed of portions thereof, He conveyed to William Bundy (C.O.B. 51, folio 212) one-fourth of an arpent (48 feet) front on Bayou Barataria, this being the southernmost portion of the property; to Ernest Alfred Coulon he sold (C.O.B. 54, folio 64) 31^4 feet front on Bayou Barataria adjoining William Bundy; to John Perrin he sold (C.O.B. 54, folio 63) 31)4 feet front on Bayou Barataria adjoining Ernest Alfred Coulon. All sales were made under a description reciting that the property had a depth between parallel lines running to Lake Ouacha.
John Christen died in 1940 and by judgment of possession rendered in his succession proceedings (C.O.B. 181, folio 315) the plaintiffs, as his widow and sole and only child, respectively, were sent and placed into possession of his estate, the assets of which embraced the remainder of the land acquired, as aforesaid, by himself and his wife, measuring 177 feet front on Bayou Barataria, with a depth between parallel lines running to Lake Ouacha in the rear.
Defendant acquired his property by purchase from the plaintiffs per act of sale dated May 24, 1943, passed before Ernest M. Conzelmann, N. P. (C.O.B. 193, folio 200). The sale described the land as having a front on Bayou Barataria of 80 feet and extending in depth between parallel lines to the Public Road. The sale was made subject to a right of way 8 feet wide running along the north line of the property and extending from Bayou Barataria to the Public Road. This right of way was established in the act in favor of George Pierce and wife and Willie Belsom.
After selling the said 80 feet to the defendant, there remained in plaintiffs’ ownership a portion of land having a front of 97 feet on Bayou Barataria, by a depth between parallel lines running to the Public Road, said tract adjoining defendant’s property on the north.
Defendant testified that when he built his fence Mrs. Christen told him to project the fence line from the Belsom tract on the west side of the Public Road to Bayou Barataria and to erect his fence along this projected line between the Public Road and the bayou, which he says he did. Mrs. Christen denies his statements. But even if the controverted testimony is deemed to- be true, the placement of the fence under the circumstances recited would not establish a boundary line such as the law would recognize. According to LSA-C.C. art. 832 the fixing of new boundaries or the investigation of old ones may be made extra judicially and by mutual consent. However, LSA-C.C. art. 833 explicitly provides whether the limits be fixed judicially or extrajudicially, it must be done by a sworn surveyor of this state.
As a starting point or bench mark Landry utilized an old grate bar located on the upper line of Little Davis Plantation. Font-cuberta agrees that this is a well-recognized monument.
*51 From the old grate bar Landry traveled eastward a distance of 53.75' along the upper line of the Little Davis Plantation to a point he designates as “O” in the Public Road; he proceeded thence along the Public Road N 35° 43' W for a distance of 203.42' to point “A” (the southwest corner of plaintiffs’ land); thence N 74° 24' E 109.91' to point “B” (plaintiffs’ southeast corner); thence along Bayou Barataría N 30° 36' W 100.42' to point “C” (plaintiffs’ northeast corner); thence S 74° 24' W 119.45' to point “D” (plaintiffs’ northwest corner); thence along the Public Road S 35° 43' E 103.31' to “A” the place of beginning. The distance between the parallel lines from “A” to “B” and from “C” to “D” measured at right angles thereto is 97' which Landry says represents the frontage of plaintiffs on Bayou Barataría as per their title.
Returning to “A”, the place of beginning (this would form defendant's northwest corner), Landry went N 74° 24' E 109.91' to “B” (defendant’s northeast corner); thence along Bayou Barataría S 30° 36' E 82.82' to “E” (defendant’s southeast corner) ; thence S 74° 24' W 102.05' to “F” (defendant’s southwest corner); thence along the Public Road NT 35° 43' W 85.20' to “A”, the point of beginning. The distance between the parallel lines from “A” to “B” and from “E” to “F” is 80', the frontage on Bayou Barataría and the Public Road called for by defendant’s title.
Landry also shows on his map the property between the Public Road and Bayou Barataría owned by William Bundy, Ernest Alfred Coulon and John Perrin (the ven-dees of John Christen), and the sidelines of each tract are parallel as are the sidelines of plaintiffs’ and defendant’s property. Landry gives Bundy, Ernest Alfred Coulon and Perrin the precise width called for by their titles as measured at right angles between the sidelines. His plan reflects that titles of the present owners of all of the 288' of frontage on Bayou Barataría originally acquired by John Christen and Mrs. Anaise Coulon Christen are satisfied without deviation or exception.
On the other hand, discrepancies are manifest on Fontcuberta’s map. He fixes the boundary about 21' distant from where Landry places it. Fontcuberta testified he "researched” the title of all owners between the Little Davis Plantation line up to and including the title under which plaintiffs claim. He went on the ground and “oriented” himself and from the old grate bar:
“ * * * proceeded to make what we would have liked to make, what I call an ideal survey. That is saying, title.”
However, Fontcuberta discovered, after running several tracts, that his measurements and calculations were in disagreement with existing fences and buildings. He said:
“The further north we went, the worse it got.” He went on to state:
“We then inquired as to the property lines of various owners adjoining Mr. Coulon and Mrs. Christen’s property and each one was willing to tell us where their lines were.”
Fontcuberta completely abandoned all thought of making an “ideal survey” as per title measurements and his sidelines of all the tracts lying between the Public Road and Bayou Barataría were established simply by projecting the fence lines from the other or west side of the road. He says this was the “controlling factor” and used the edge of the public highway as the base line. He admits he does not know where the right of way begins or where it ends. The net result is that Fontcuberta shows the dimensions of each tract to be materially different from title measurements. Starting at the Little Davis Plantation projected fence line, he gives Bundy an actual frontage on Bayou Barataría of 60' whereas the title calls for 48'. Bundy’s frontage along the Public Road is shown as 55.05'. Ernest Alfred Coulon’s land has an actual measurement on Bayou Barataría *52 of 38' although the title calls for 31.5'; the actual frontage on the Public Road is 4O'. John Perrin’s title describes his land as being 31.5' front, but his actual measurement is 51' front on Bayou Barataria by 47' front on the Public Road. The defendant’s frontage as per his title is 80' on Bayou Barataria, but the actual measurement shown by Fontcuberta is 81' with the same frontage on the Public Road. The most glaring discrepancy of all appears in plaintiffs’ property. Their title calls for 97' front, but according to Fontcuberta the actual measurement is only 81' front on Bayou Barataria and 90' on the Public Road.
One thing stands out more than all else in Fontcuberta’s survey and that is that none of the tracts as he shows them have parallel sidelines. John Christen and his wife, Mrs. Anaise Coulon Christen, acquired the land under descriptions calling for a depth between parallel lines, and all sales made by John Christen and the sale made by plaintiffs to defendant recited that the property sold had a depth between parallel lines.
Fontcuberta made no perpendicular measurement between the sidelines as Landry did. The frontage he gives each owner is represented by a measurement made along the line of the general direction in which Bayou Barataria flows.
Landry is a surveyor of more than forty years’ experience. He testified:
“ * * * the frontage is a perpendicular distance between the two side lines * * * that is the only way to measure it.”
He rejected completely the idea of measuring along the meander line of the stream.
The conflicting surveys unquestionably result from the different methods employed by the two engineers in reaching their conclusions, and a solution of the controversy would depend on which survey is to be considered the correct one and adopted as such.
We do not think that the court should extend judicial approval to Fontcuberta’s fixation of the boundary, as it appears the means he used in arriving at his conclusions are dubious, to say the least. After making his start from the old grate bar on the upper line of Little Davis Plantation, he forsook all consideration of title measurements when it appeared to him that the lines called for by the titles did not coincide with the locations of certain improvements. Instead Fontcuberta proceeded to base his survey on verbal information elicited from the various proprietors and by the projecting of fence lines from the west side of the public highway. Landry’s map shows that each and every one of these fences is off line.
In Barker v. Houssiere-Latreille Oil Co., 160 La. 52, 106 So. 672, 674, the Supreme Court had occasion to comment on the use of fences as starting points in a survey:
“Old fences are very unreliable as starting points or checking points in city surveys, and a surveyor should use great caution in adopting same. Clark on Surveying, § 18, p. 14; Johnson-Smith on Surveying, p. 732; Martin v. Breaux, 12 La.Ann. [689] 690.”
Landry, with instruments, sought to establish the location of boundaries in accordance with the titles. This is in accordance with law. LSA-C.C. art. 841 in part reads:
“It is the duty of the judge who has cognizance of suits on the subject of limits, to appoint surveyors to inspect the premises in question, and the court, on their report, ought to decide according to the titles of the parties, * * *. ”
It also appears that Landry’s formula for ascertaining each owner’s frontage on Bayou Barataria by perpendicular measurement between sidelines is the correct one. In the syllabi in Minor v. *53 Daspit, 128 La. 33, 54 So. 413 the Supreme Court said:
“A sale of a tract of land 4 arpents front on a bayou by 40 arpents in depth conveys 160 arpents in a parallelogram, unless the contrary intention be clearly shown by the evidence.
“In such a case, the rule is to measure the breadth on the stream by a line at right angles to one of the side lines which are presumed to be parallel.”
The record shows the significant fact that had Fontcuberta used Landry’s method there would have been no variance between the two surveys. This appears from Fontcuberta’s own testimony.
He was asked:
“If I measured that on a right angle line, do you know how that would have come out?”
His reply was:
“Yes, sir, I have a good idea.”
In answer to the question:
“How do you figure it would come out?”
He stated:
“It would have come out the same way as Mr. Landry’s came out.”
In light of the circumstance surrounding the making of the surveys, the only logical conclusion that could possibly be reached is that Landry’s survey is correct and that his boundary between points “A” and “B” shown thereon is the more worthy and should be adopted. Accordingly, it is apparent that certain improvements, viz.: a fuel tank, cistern, two fences, an outhouse and the northeast corner of defendant’s building encroach on the property of plaintiffs.
Defendant claims he built his fence in August, 1943, along the boundary line and that the said fence still stands. He pleads “the cause of action stated in plaintiffs’ petition prescribed in August of 1953.”
As the basis of this plea defendant is evidently relying on the provisions of LSA-C.C. art. 853 which read as follows:
“If the boundaries have been fixed according to a common title, or according to different titles, and the surveyor had committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed, be acquired by an adverse possession of ten years, if the parties are present, and twenty years, if absent.”
That codal article has no application whatever to this case. There never was any prior survey by a sworn surveyor fixing the contested boundary, and therefore, there was no adverse possession by defendant under a survey.
In Barker v. Houssiere-Latreille Oil Co., supra, we find the following language:
“In order to sustain the plea of prescription of 10 years under article 853, it is necessary not only to show a possession of 10 years, but also that the possession has been held by boundaries fixed by a surveyor in accordance with article 833 and consecutive articles of the Civil Code, requiring the work to be done by a sworn surveyor of the state, notice to the parties, examination by the surveyor of title papers, procés verbal of survey, etc. Gray v. Couvillon, 12 La.Ann. 730.”
The plea is without merit.
In his supplemental and amended answer defendant specially sets up “prescription of ten years, thirty years, and estoppel.”
The plea of acquisitive prescription of ten years is unavailable to defendant. His fence does extend beyond his property line, but under the facts of the case we know of no law by which he may prescribe beyond the limits of his title by the possession of ten years. Immovables are prescribed for by ten years when the possessor has been in good faith and held *54 by a just title during that time. LSA-C.C. art. 3474.
LSA-C.C. art. 3478 stipulates:
“He who acquires an immovable in good faith and by just title prescribes for it in ten years. * * * ”
Defendant emphasizes the prescription of thirty years in a special plea lodged in this court. He alleges that certain installations were made on the property by the “Belsoms,” his authors in title; that they built wharves on the edge of the bayou; that these have been used for more than thirty years without anyone having asserted adverse claims; that he is entitled to tack onto his own possession that of his authors in title which in all would amount to more than thirty years’ uninterrupted possession.
But even if we assume, without deciding, that defendant could tack the “Belsom’s” possession to his own, still there is no evidence that there was an uninterrupted adverse possession of more than thirty years. There is no showing for what period of time any wharves or installations of other persons have existed on plaintiffs’ property as the trial judge excluded such evidence upon the objection of counsel for plaintiffs.
The plea of thirty years’ prescription is without foundation, and therefore it is overruled.
Defendant also alleged:
“Defendant shows that plaintiffs have ■ stood by while defendant built his home, part of which they allege to encroach approximately six feet upon their property; all done with no objection from the plaintiffs, but rather with their cooperation and acquiescence; and accordingly, plaintiffs should be estopped now from claiming the boundary line which they propose in this litigation.”
This plea cannot be sustained.
It is a cardinal essential of the principle of estoppel that the person sought to be estopped must have had knowledge of all of the facts and been cognizant of his legal rights. Little v. Barbe, 195 La. 1071, 198 So. 368; Parker v. Ohio Oil Co., 191 La. 896, 186 So. 604; Gallagher v. Conner, 138 La. 633, 70 So. 539; Jones v. Alford, La.App., 172 So. 213. It does-not appear that Mrs. Christen at the time-defendant erected his improvements knew of the facts or had reason to believe defendant was building beyond his property line. Moreover, were it otherwise, the other plaintiff, Mrs. Laughlin, would not be bound.
It is indeed unfortunate that defendant undertook to construct valuable improvements without first taking the necessary precaution of having the premises surveyed in order that he might determine his limits, and he can blame only himself for his present plight. We are told that if the boundary is fixed as it is shown on the Landry survey, this will also have the effect of dislocating and disrupting fences and buildings of other owners in the vicinity, but this, even if it be true, would be no valid reason for rejecting Landry’s line which we are fully convinced is the true boundary between the respective properties of the -parties.
We now pass to the assessment of the cost of the survey. Defendant in answer-admitted that plaintiffs endeavored to obtain his consent to an extrajudicial fixing-of the boundary, but that he refused to-have the matter amicably settled and maintained that his fence, as it now stands,, represents the correct boundary.
Ordinarily it is the rule that the-costs of the survey must be divided between the parties. LSA-C.C. art. 663; Tircuit v. Pelanne, 14 La.Ann. 215; Lafaucia v. Wagner, 7 La.App. 180; Gaubert v. Gaubert, 1 La.App. 719. But where the-defendant resists plaintiff’s demand to have ■ their boundaries fixed in accordance with. their respective titles and compels a suit,. *55 the provisions of LSA-C.C. art. 663 do not apply and he should be condemned to pay the whole cost of the survey and not only one half. Dufrene v. Bernstein, 190 La. 66, 181 So. 859; Gaude v. Williams, 47 La.Ann. 1325, 17 So. 844; Miller v. Welsh, La.App., 66 So.2d 25; Fairbanks v. Louisiana Central Lumber Co., La.App., 163 So. 209; Lafaucia v. Wagner, supra.
For the reasons aforestated, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiffs and against the defendant, fixing and establishing the boundary line between the property of plaintiffs and defendant as described in the petition, along the line between points “A” and “B” as shown on and in accordance with the survey made by Henry E. Landry, Surveyor, under order of court, a blue print of which is on file in these proceedings and made part hereof.
It is further ordered, adjudged and decreed that the defendant is condemned to pay the fee and costs of Henry E. Landry for the survey and also all costs of court, including the cost of this appeal.
Reversed.