514 So.2d 14 (1987)
Norbert J. HURST, et al.
v.
Eveylyn Vallet RICARD, et al.
No. 86-C-2483.
Supreme Court of Louisiana.
October 19, 1987.
Rehearing Denied December 10, 1987.
*15 John Jewell, Jewell & Jewell, New Roads, John R. Tharp, William McClendon, III, Lloyd Lunceford, Taylor, Porter, Brooks & Phillips, Baton Rouge, for applicant.
Thomas Nelson, New Roads, for respondent.
DENNIS, Justice.
This is an action to establish the boundary line between the contiguous properties of plaintiffs and defendants. Both tracts belonged originally to a common owner, Gatien Decuir, and were carved from a larger tract having a front of five arpents on the lower chenal[1] of False River in Pointe Coupee Parish. The parent tract was a wedge-shaped or trapezoidal tract tapering rearward to a back boundary line substantialy shorter than its front.
Gatien Decuir divided the parent tract among his family members in a number of separate conveyances. In 1882, he sold to plaintiffs' ancestor in title the first carved out tract (the Hurst tract) fronting one and one-quarter arpents on the lower chenal of False River by a depth of fifty arpents more or less. However, the deed did not describe the side line or give the dimension of the rear boundary of the property conveyed. In 1888, Decuir sold to defendants' ancestor in title the second carved out tract (the Ricard tract) having a one acre front on False River adjacent to the property now known as the Hurst tract "with lines closing toward the rear according to title." However, again no dimension was given of the rear property line. On the same day, Decuir conveyed to his wife, Rosalie Patin, the remainder of his tract described as having two and one-half arpents more or less fronting on False River. Again, the dimension of the rear boundary was not given.
The land which Decuir divided among his family members is located within Section 49 of Pointe Coupee Parish. Section 49 is a large trapezoid-shaped tract fronting on the lower chenal of False River that was originally owned by Gatien Decuir's father, Joseph Decuir; its rear width is approximately two-thirds that of its front. A surveyor's drawing introduced as an exhibit indicates that Section 49 has been subdivided into some 20 tracts fronting on the chenal and closing or tapering to the rear.
There is no dispute as to the location of the front property lines of the contiguous Hurst and Ricard tracts. The sole controversy is whether the boundary line between them should be drawn so that the Hurst tract closes or tapers to the rear; in other words, whether the Hurst tract is a trapezoid or a parallelogram. This disagreement between adjacent owners over a relatively small amount of land after one hundred years of peaceful coexistence was provoked by mineral production from the properties.
*16 At trial, three surveyors testified as to how each would establish the boundary line. Mr. Hargrave, the surveyor called by the Hurst tract owners, testified that in his opinion the boundary between the tracts should be parallel with the other side line of the Hurst tract, which also is a section line. He inferred this from the fact that the deed from Decuir to the ancestor in title of the Hurst tract owners was silent as to whether the side lines should open or close to the rear. Also, he found remnants of an old fence in close proximity to the line he ultimately concluded should be the boundary.
Mr. Laws, the surveyor called by the Ricard tract owners, was of the opinion that because the 1882 deed was silent as to the direction of the side lines of the Hurst tract, the side line should be drawn so as to taper or close to the rear, thus giving each tract a back line proportionate to its front line. He testified that it was a custom or usage to divide chenal frontage into tapered tracts closing rearward in Section 49 and in other trapezoidal sections closing rearward that front on navigable or formerly navigable streams in southern Louisiana, particularly along False River. Mr. Haydel, who had performed an independent survey of the same property for Chevron, was also called as an expert by the Ricard tract owners. He corroborated the testimony of Mr. Laws that the lines should close to the rear when a deed is silent on the matter and confirmed that this was a common practice or usage in Section 49 and similarly situated tracts.
After reviewing the conflicting testimony in the case, the trial judge found that the preponderance of the evidence as to the aim of the 1882 deed supported the division line advocated by the Ricard tract owners and adopted it as the boundary. In reaching his decision, the trial judge made several findings of fact: he found it unlikely that Decuir intended for the boundary to parallel the section line because this would have increased the degree of closing of his remaining property; he gave credence to the testimony of Mr. Laws that the various properties originally part of the Decuir property closed proportionately to the rear; he rejected the survey by Mr. Hargrave because it failed to use the ancient monuments found and accepted by Mr. Laws; and he rejected the old fence remnants as evidence of intention of the parties to the 1882 deed because of the lack of proof that the fence was in existence at that time.
The court of appeal reversed. Hurst v. Ricard, 498 So.2d 258 (La.App. 1st Cir. 1986). The appeals court concluded that decisions of this court as a matter of law required that the boundary line be parallel to the other sideline of the Hurst tract. Bourguignon v. Boudouisquie, 6 Mart. (N.S.) 697 (1828); see also, Bergeron v. Daspit, 119 La. 9, 43 So. 894 (1907), on rehearing, (decided after remand sub nom., Minor v. Daspit, 128 La. 33, 54 So. 413 (1911)); Ramos Lumber & Mfg. Co. v. Sanders, 117 La. 615, 42 So. 158 (1906). Apparently, the rule which the court of appeal deduced from these cases, primarily Bourguignon, is that "when a man sells so many arpents of land on a water course, with the ordinary depth of forty, he is understood to convey the superficial quantity which results from multiplying the depth by the front, or, in other words, that the side lines must be run at right angles from the front, unless the lines are stated to close, or open, or other expressions used, by which the legal intendment of the terms so much as front and depth is controlled." 6 Mart. (N.S.) 697, 700. This court on original hearing affirmed, agreeing with the reasoning and the result. On rehearing, we reverse.
Interpretation of a contract is the determination of the common intent of the parties. Civil Code art. 2045 (1984). See comments under this and other code articles cited below for their sources in the Civil Code of 1870. See Soverign Insurance Company v. Texas Pipe Line Company, 488 So.2d 982 (La.1986). The general rules which govern the interpretation of contracts apply in construing a contract of sale, except when special provision is made otherwise by law. Civil Code art. 2438 (1870).
*17 In resolving boundary disputes, this court has consistently recognized that the principal judicial duty and objective is to determine and implement the intention of the parties and that the rules of interpretation set forth in statutes and jurisprudence must be considered as auxiliary rather than as absolutely controlling. City of New Orleans v. Joseph Rathborne Land Co., 209 La. 93, 24 So.2d 275 (1945); Dufrene v. Bernstein, 190 La. 66, 181 So. 859 (1938); Nattin v. Glassell, 156 La. 423, 100 So. 609 (1924); Williams v. Baughman, 477 So.2d 734 (La.App. 1st Cir.), cert. denied, 479 So.2d 921 (La.1985); Hester v. Smith, 72 So.2d 549 (La.App. 2d Cir. 1954); Sharpless v. Adkins, 22 So.2d 692 (La.App.2d Cir. 1945).
As this court explained in Nattin v. Glassell, 156 La. 423, 425, 100 So. 609 (1924):
"The polar star in all [boundary] controversies... should be, if it can be seen, the intention of the parties. Of course, there are certain well-recognized rules, both in the statute law and jurisprudence, which serve as bearing signs in ascertaining such intention when it is otherwise obscure. Among these are that when persons own property on either side of a nonnavigable stream, which is designated as the boundary, the center or thread of such water course is considered the dividing line; and where one owning property on both sides sells a part, referring to the stream as boundary, the ownership extends to the thread, unless it clearly appears otherwise that a different purpose was intended. There are also such rules as that natural or fixed monuments, such as water courses, hills, trees, etc., prevail over artificial guides such as posts, courses, distances, quantity, etc., fixed and ascertained by human agency. However, none of these is absolutely controlling. The duty of a court is, as stated above, to determine if possible, the intention of the parties. Adm'rs Tulane Educational Fund v. Stair et al., 148 La. 11, 86 South. 595 [(1920)]."
Although the trial judge's reasons do not reconstruct his entire decisional process, it is evident that he conscientiously followed the applicable interpretive aids in ascertaining the intention of the parties to the sale. Because the words of the Hurst tract deed were not clear and explicit as to the dimension of the back line or the direction of the side line, he proceeded to further interpretation of the parties' intent. Civil Code art. 2046 (1984). Because the words of the deed were susceptible of different meanings, the trial court took into consideration the object of the contract, viz., division of rearward tapering chenal frontage among family members. Civil Code art. 2048 (1984). Further, because the deed provisions were doubtful, he interpreted them in light of usages by owners in subdividing tapered chenal or waterfront tracts, and the manifest equity inherent in dividing such property with proportionately closing lines. Civil Code art. 2053 (1984). The trial judge thus recognized that because the parties to the deed made no provision for the dimension of the back line, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose. Civil Code art. 2054 (1984).
Equity, as intended in interpretation of contracts, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another. Civil Code art. 2055 (1984). Usage is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation. Id.
The trial court also considered carefully the testimony of the surveyors and expressly found the testimony of Mr. Laws more persuasive than that of Mr. Hargrave. We cannot say that he erred manifestly in this or in any respect in the performance of his function as the trier of the facts. Accordingly, after rehearing and reconsideration, we approve of the trial *18 court's decision and concur in its establishment of the boundary.
The previous decisions of this court in Bourguignon v. Boudouisquie, supra, and other cases reciting the rule stated therein do not require a different result. The Bourguignon jurisprudential rule is only an interpretive precept, which serves as an aid to ascertain the parties' intention when it is otherwise obscure and not as an exclusively controlling statement of positive law. Moreover, this rule of interpretation, in our opinion, was conceived as an aid to the determination of the parties' intention in carving tracts from a rectangular water course frontage and should not be applied mechanistically to sales from trapezoidal or other irregular tracts. No indication was given by Bourguignon or any of the cases repeating its rule that the court was faced with the division of trapezoidal property. Furthermore, the rule as stated by the seminal court requires not only that the side lines run parallel to each other, but that they run at right angles to the front line. Bourguignon, supra, at 700; see also Ramos Lumber & Mfg. Co. v. Sanders, 42 So. 158 at 163. Clearly this rule contemplates nothing more than the division of a rectangle or perhaps a trapezium, and does not apply to a trapezoid, because it is difficult to imagine how side lines could be drawn within a trapezoid to produce both parallels and right angles. Application of the Bourguignon rule indiscriminately to all quadrilaterals or polygons would lead to absurd, unjust and impracticable results. Consequently, we conclude that the trial court correctly rejected the Bourguignon rule of interpretation and considered instead all of the circumstances, including the deed, usage and equity, in determining the intention of the parties to the deed.
For the reasons assigned, the judgment of the court of appeal is reversed and the trial court judgment is reinstated.
REVERSED; TRIAL COURT JUDGMENT REINSTATED.
WATSON, J., dissents and will assign reasons.
MARCUS, J., dissents adhering to the opinion on original hearing.
WATSON, Justice, respectfully dissents for the reasons assigned in the original opinion.
While the majority result may be equitable, it is, in my opinion, contrary to the Bourguignon line of cases which should be overruled.
NOTES
[1] 1 Harrap's New Standard French and English Dictionary, p. C42 (1972): "chenal, ...: channel, fairway (of river, harbour, etc.)"