GUIDRY, Judge.
This is a boundary dispute. Plaintiffs, Joseph Wilson Sellers and Marie Lois Gas-pard Sellers, brought this action against defendant, Tisa Stelly Sinegal, to have the boundary between their contiguous properties judicially established. The trial court established the boundary between the contiguous estates in accord with a survey of the property done by Stephen Langlinais dated June 16, 1981, revised July 20, 1981 and October 23, 1981. The sole issue on appeal is whether the trial court erred in fixing the boundary pursuant to the Langli-nais survey. We affirm.
FACTS
The parties to this suit each own a 2.252 acre tract of land which once formed part of a 28.874 acre tract of land located in Irregular Section 64, Township 12 South, Range 3 East, Vermilion Parish, Louisiana. This larger tract was owned by Joseph Otis Stelly, defendant’s father. After Joseph Stelly’s death, the 28.874 acre tract was partitioned amongst his four children, Douglas Stelly, Tisa Stelly, Sharal Wayne Stelly and Laura Dean Stelly, by an act executed on December 15, 1981. The parti *1074 tion was based upon the Langlinais survey previously referred to which divided the acreage into two separate tracts and further subdivided the first tract into smaller separate tracts. These tracts were labeled 1-A through 1-H on the survey plat.
The contiguous tracts at issue in this dispute, 1-E and 1-F, were assigned to Douglas Stelly and Tisa Stelly, respectively. The survey plat attached to and filed with the act of partition indicates that the boundary between these two contiguous tracts was marked by the surveyor with 6/sths inch iron rods. The plat also shows a catfish pond located entirely within Tract 1-E, but, while the four corners of the tract of land are plotted, the exact dimensions of the pond are not. See Appendix I.
Besides Tract 1-E, Douglas Stelly also acquired Tracts 1-D and 1-H in the partition. He subsequently mortgaged all three tracts to the Gulf Coast Bank. The bank eventually foreclosed on the mortgage and bought the three tracts of land at a Sheriffs sale on November 22, 1985. By cash deed dated December 6, 1985, Gulf Coast Bank sold the three tracts formerly owned by Douglas Stelly to the Sellers.
After the Sellers purchased the property, they allowed the Stelly family members to fish in the pond. Perceiving an abuse of this privilege by members of the Stelly family and their friends, Joseph Sellers confronted defendant and her husband, Warren Sinegal, and requested that they, their family and friends stop their use of the pond. Joseph Sellers was informed by Warren Sinegal that he had no right to restrict access to the pond because it rested partially on Tisa’s tract (1-F). At this point, the Sellers realized for the first time that they might not own the entire pond. Warren Sinegal then strung a barbed wire along the boundary from the steel rod on the north boundary to the steel rod on the south boundary.
On November 14, 1989, plaintiffs filed this suit to have the trial court judicially establish the boundary between Tracts 1-E and 1-F. Prior to trial on the merits, the Sellers hired Joseph Schexnaider, a registered land surveyor and civil engineer, to conduct a second survey of the questioned boundary. The survey revealed that the easternmost edge or “toe” of the pond’s levee was 33 feet within Tract 1-F owned by Tisa Sinegal. The boundary was marked at the same line on the ground as in the 1981 Langlinais plat. As a result, Schexnaider’s plat reflects that the entire eastern levee and a portion of the pond’s water surface is situated on Tisa Sinegal’s property. See Appendix II.
The trial court rendered judgment in favor of defendants finding that, in all documents relating to the transfer of title, Tracts 1-E and 1-F were described by measurements (feet and inches) and boundaries (iron rods). The trial court established the boundary in accordance with the iron boundary rods placed on the property by Langlinais in 1981. From this judgment, plaintiffs appeal urging error in the trial court’s failure to protect plaintiffs as good faith third party purchasers who reasonably relied upon the location of the pond on the 1981 Langlinais plat filed in the public records. They urge that the boundary should have been established along the “toe” or eastern edge of the levee, as it is depicted in the 1981 Langlinais plant.
Stephen Langlinais, the surveyor, testified that the pond was still under construction when he went onto the property to do the initial perimeter survey work. Langli-nais stated that, at that time, the Stelly heirs intended that Douglas would receive both Tracts 1-E and 1-F in the partition. For this reason, the parties to the partition deemed it unnecessary to survey the exact dimensions of the pond and to have it precisely represented on the plat. Accordingly, Langlinais only “shot” the four corners of the pond and “roughed in” the dimensions of the pond on the plat.
When Langlinais was informed that Tisa was to receive Tract 1-F, he mentioned to Douglas several times that the pond was not correctly shown on the plat. In response, Douglas told him that it was unnecessary to measure the precise dimensions of the pond because it was to remain “all in the family”. In addition, Langlinais testi *1075 fied that Douglas was reluctant to spend the money necessary to survey the pond. Based .on this information, Langlinais saw no need to re-survey the tract to precisely include the pond. When Langlinais returned to the property in 1990 to re-survey the pond, Langlinais found the 5/sths inch iron rods that he had placed in the ground in 1981 to mark the boundary.
Joseph Schexnaider testified that he was retained in July 1989 by plaintiffs to establish a specific property line. He based his plat on the 1981 plat prepared by Langli-nais. While Schexnaider criticized the Lan-glinais plat for not showing the pond as it actually existed on the ground, he conceded that his plat and the Langlinais plat were "fairly similar” as far as actual measurements are concerned. He stated that the boundary line depicted on his plat was in the same place as on the 1981 Langlinais plat. Schexnaider also pointed out that his depiction of the pond is far more detailed than that of Langlinais.
Joseph Sellers and Lois Sellers testified that, at the time they purchased Tract 1-E, they both believed that the pond was located entirely within that tract. They never had any indication from any member of the Stelly family that the pond extended partially onto Tisa’s property. Lois stated that they naturally assumed that the pond and levee were completely within Tract 1-E because it was recorded as such on the 1981 Langlinais plat.
Tisa Sinegal stated that the pond was not completed until April of 1982, approximately four months after the partition based on the Langlinais plat was signed. As far as she knew, the pond was located on her brother Douglas’ property, Tract 1-E. She did not realize that part of the pond and levee was on her property until her husband, Warren, told her as much.
Warren Sinegal testified that, prior to the foreclosure on Douglas’ three tracts, Douglas tried to prevent him from going onto the eastern levee of the pond. In response, he ran a straight barbed wire along the boundary line marked by the iron posts. After the sale to the Sellers, they granted him and the Stelly family permission to fish in the pond. Later, for reasons unknown to Warren, Joseph Sellers attempted to prohibit him from going on the levee. He responded that the Sellers could not prohibit him or his family from going onto the levee because Tisa owned the levee and part of the pond.
LAW
La.C.C. art. 789 provides:
“The boundary may be fixed judicially or extrajudicially. It is fixed extrajudieially when the parties, by written agreement, determine the line of separation between their lands with or without reference to markers on the ground.”
The original partition between the heirs of Joseph Stelly constituted an extrajudicial fixing of boundaries of the several tracts as between the parties. Young v. Morvant, 358 So.2d 1292 (La.App. 3rd Cir.1978). This written agreement established the boundary with reference to %ths inch iron rods placed on the ground by Langli-nais while conducting his survey in 1981.
There is no issue of prescription in this case, thus, the boundary at issue must be fixed according to titles. In resolving boundary disputes, the principal judicial duty and objective is to determine and implement the intention of the parties. The rules of interpretation set forth in statutes and jurisprudence must be considered as auxiliary rather than as absolutely controlling. Hurst v. Ricard, 514 So.2d 14 (La.1987), appeal after remand, 558 So.2d 1269 (La.App. 1st Cir.1990), writ denied, 559 So.2d 1378 (La.1990). The determination of a disputed boundary is a question of fact which should not be disturbed on appeal in the absence of manifest error. Barker v. Quality Builders, Inc., 503 So.2d 1170 (La.App. 3rd Cir.1987); McCullin v. Sumners, 401 So.2d 458 (La.App.2d Cir.1981).
A thorough review of the record indicates that the pond is depicted entirely within Tract 1-E only on the 1981 Langli-nais survey plat upon which plaintiffs relied. However, the exact dimensions of the pond are not indicated thereon and the exact measurements of the pond were never *1076 taken by Langlinais. By Langlinais’ own admission, he merely “roughed-in” the pond onto Tract 1-E because he was informed by the Stelly family that an exact location was neither desired nor necessary. Furthermore, there is no mention of the pond or its exact dimensions in any property description. The description is given in acreage quantity and according to adjoining tracts with reference to the Langlinais plat.
The iron rods placed on the property to mark the boundary are shown at the same points on both the 1981 Langlinais plat and the 1990 Schexnaider plat. A reasonable inspection of the property by the Sellers prior to their purchase would have revealed to them that the iron rods were at points whereby the eastern levee and a portion of the pond were located on Tisa’s property. Clearly, the parties to the partition agreement intended that the boundary line between Tracts 1-E and 1-F be located at the line between the two iron rods and not along the “toe” of the eastern levee. The trial court’s establishment of the boundary between these two iron rods is based upon well settled and logically sound legal principles and is not manifestly erroneous.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by defendants.
AFFIRMED.
*1077 APPENDIX I
[[Image here]]
*1078 APPENDIX II
[[Image here]]