WATSON, Justice.
This is a suit to fix the boundary[1] between contiguous tracts[2] in the Parish of Pointe Coupee, Louisiana. The issue is whether sales of land slices from a trapezoid shaped waterfront tract must follow the contours of the parent tract when the deed is silent on that question, i.e., are the side lines, as a matter of law, angled rather than parallel?
Both sets of owners trace their title to a common ancestor, Gatien Decuir. The property is located on False River, which is an ox bow lake created by the Mississippi River in the 1700’s.
Joseph Decuir owned irregular Section 49 on False River which he divided into two halves, each with a frontage of 10 arpents.[3] The northeastern half was then divided into two quarters, each with a frontage of 5 arpents. A quarter section was conveyed by Joseph Decuir to Gatien Decuir in 1874.
Plaintiffs’[4] title originated with an act of sale from Gatien Decuir to Leonce Decuir on March 11,1882, of property described in part as follows:
“A certain tract of land situated on the lower Chenal of False River in the parish of Pointe Coupee, fronting one arpent and a quarter of an arpent front on the lower Chenal of False River by a depth of fifty arpents more or less, forty of which back of the main road, ...”
*1203 In this sale of “the Hurst tract”, the property description fails to state whether the side boundaries of the tract should be parallel or converging.
Defendants[5] trace their title to a sale from Gatien Decuir to Alma Decuir, wife of Alcide Ricard, and Ervin Decuir, a minor, on January 10, 1888, when the following described tract was sold:
“A certain tract of land situated in the Parish of Pointe Coupee having one acre front on False River by a depth of Forty arpents with lines closing towards the rear according to title, including the Bat-ture in front of said tract ... bounded by land of Leonce Decuir and of Rosalie Patín.”
This land, “the Ricard tract”, has closing or converging side lines specified in the deed, indicating that the side lines are at angles conforming with those of the parent tract. Thus, since the side lines of the Ricard tract converge, must the bounds of the adjacent Hurst tract also converge?
The trial court concluded that: the Hurst tract should have converging lines to harmonize with the Ricard tract; the initial sale must have contemplated the same proportional closing to the rear; and parallel side lines are an exception which should be specified.
The court of appeal[6] reversed on the basis of Bourguignon v. Boudousquie, 6 Mart. (N.S.) 697 (1828),[7] which states:
“It is a well settled principle of law that when a man sells so many arpents of land on a water course, with the ordinary depth of forty, he is understood to convey the superficial quantity which results from multiplying the depth by the front, or, in other words, that the side lines must be run at right angles from the front, unless the lines are stated to close, or open, or other expressions used, by which the legal intendment of the terms so much front and depth is controuled. “It is equally clear and well settled that if the owner of a tract of land sells it out by separate portions at different times, and there is not enough for all the purchasers, that he who has first acquired gets the whole quantity he has bought, and the second, or other buyer, only takes what remains, after satisfying the prior sales. Louisiana code, 843.” 6 Mart. (N.S.) 697 at 700.
A writ was granted to consider the judgment of the court of appeal.[8]
The 1871 U.S. government survey[9] shows that the nearby tracts were generally shaped either like parallelograms or trapezoids. Adjacent Section 48 is a trapezoid which is inversely proportioned to this parent tract, being longer in the front than the back. The other adjoining section, Section 50, was at one time partly owned by Gatien Decuir and divided by parallel lines.
The 1828 Bourguignon opinion reflected well settled law when Gatien Decuir made the 1882 conveyance. Side lines were presumed to be parallel, unless the deed specified otherwise. See Henderson v. St. Charles Church, 7 Mart. (N.S.) 117 (1828); and Bourgeat v. Bourgeat, 12 La. 139 (1839). Henderson’s one headnote is explicit:
“A grant of 20 arpents in front with a depth of 40, passes a superficies of 800. If the contrary do not appear, the sides will be held to be parallel.”
Both Henderson and Bourgeat dealt with river front property and their holding is unequivocal. When a tract is sold measuring X arpents by Y arpents, the total of X times Y lies between parallel lines unless the contrary is specified.[10]
*1204 Later cases followed the earlier jurisprudence. Bergeron v. Daspit, 119 La. 9, 43 So. 894 (1907)[11] states that a vendor selling a tract of land four arpents in front by forty deep intends to sell one hundred and sixty arpents of land in a parallelogram. That is exactly the situation here. Bergeron relied on Ramos Lumber & Mfg. Company v. Sanders, 117 La. 615, 42 So. 158 (1906) which involved property lying between Lake Palourde and Bayou Bouef. Ramos states that the sale of a tract measuring 41 arpents by 40 arpents containing I,640 arpents more or less means “in a matter of this kind, a parallelogram, and nothing else”.[12] Ramos followed Sanders v. Ditch, 110 La. 884, 34 So. 860 (1903) as well as Bourguignon, Henderson, and Bourgeat, supra.
Removal of a parallel slice from his trapezoid left Gatien Decuir with a trapezoid in roughly the same proportions as the one he originally owned. However, by the time of the second conveyance six years later, he may have had some concern about the final result of successive parallel slices, i.e., a final triangle. He may therefore have provided in the second sale that the lines would close toward the rear. However, this decision could not have affected the validity of the first conveyance which, according to well settled law, was between parallel lines.[13]
LSA-C.C. art. 793[14] provides that when parties trace their title to a common ancestor, preference shall be given to the more ancient title. It. is both logical and legal to conclude that Gatien Decuir originally sold a parallel strip off his trapezoid. Realization of the effect of continuing that course apparently resulted in the stipulation six years later that the lines of the Ricard tract would converge toward the rear. The result is some favoritism to the Hurst tract. That may have been the intent of Mr. Decuir: it is too late to know. The only physical evidence is an ancient fence which runs on a parallel line to the Hurst tract’s other boundary for approximately 4,300 feet. The remainder of the fence line meanders to both sides, but shows a consistent pattern of reference to the initial parallel fence line. The very old fence, despite its meander, indicates that the boundaries of the Hurst tract were parallel.
Prior to trial, the parties stipulated that prescription and/or possession were not at issue and the boundary was to be fixed according to title. Many of the parties only own mineral rights and the rear boundaries of the tracts were of insignificant importance prior to the area’s mineral boom.
The testimony of three expert land surveyors as to their customs and practices in the area was largely irrelevant. All admitted that they were influenced to a greater or lesser extent by the wishes of their clients, existing fences and markers, and various customs and usages in the profession. Since possession was not at issue, their testimony was not helpful.[15] Speculation as to what may or may not have been the intention of Gatien Decuir in 1882 is futile and useless. When the law is clear and well settled, it must be followed by surveyors as well as others. The only real evidence of intent is the old fence line *1205 which runs parallel to the other boundary of the Hurst tract for most of its length.
A mineral lease on what is now the Hurst property was executed by Mrs. Clara Decuir, widow of Joseph Franklin Decuir, on March 6, 1944, which describes her land as measuring IV2 acres front on False River comprising 40 acres, more or less, in Section 49 between lines converging in the rear.[16] According to expert surveyor Har-grave, this lease deserves little consideration because oil, gas, and mineral leases often do not reflect the true title to properties.
It is impossible at this point to say that the law established by Bourguignon, its predecessors, and its progeny should not only be reversed, but the reversal applied retroactively to alter a title dating back to 1882. The law then and now is explicit to the effect that the sidelines are equidistant unless a title specifies that they should open or close, and that the first purchaser takes in preference to a subsequent buyer.
In 1882, Gatien Decuir sold to Leonce Decuir a tract of land measuring IV4 ar-pents by 50 arpents. Since the title has no stipulation to the contrary, the sale was of a parallelogram measuring 1¼ arpents by 40 arpents.
For the foregoing reasons, the court of appeal opinion determining that the side boundaries of the Hurst tract are parallel is affirmed.
AFFIRMED.
CALOGERO and DENNIS, JJ., dissent.
LEMMON, J., dissents and will assign reasons.

. Fixing and marking a boundary is referred to as bornage. Lemoin v. Monda, 9 La.Ann. 515 (1854).

. LSA-C.C. art. 788 states:
"The right to compel the fixing of the boundary between contiguous lands is imprescrip-tible.”

. An arpent is the equivalent of 85% of an acre. The side measure is generally calculated at 192 feet, although the exact conversion figure is 191.83.

. Plaintiffs are Norbert J. Hurst, James H. Gra-nier, Theresa Granier, Elnora Myers, Ronald A. Hurst, Lucilla Hurst, Allen A. Poirier, Mary Nell Poirier, Glenda C. Archie, and Ervin D. Archie.

. Defendants are Evelyn Valet Ricard, Vera Ri-card Porche, Miriam Philomena Ricard Patin, Alma Ricard Collins.

. 498 So.2d 258 (La.App. 1 Cir., 1986).

. After remand, 7 Mart. 156 (1828), 2 La. 393 (1831), 3 La. 526 (1832).

. 501 So.2d 220 (La., 1987).

. Defendants’ Exhibit 3.

. "Neither the sale nor the will contain any expression that would give the defendant more than a front of three arpents, by a depth of eighty; that is, a superficies of two hundred and forty arpents, in the form of a parallelogram. He did not acquire, in our opinion, any particular proportion of the plantation, which would *1204 authorize him to hold by side lines diverging towards the rear.” Bourgeat, supra, at 141.

. For appeal after remand see Minor v. Daspit, 128 La. 33, 54 So. 413 (1911).

. 42 So. 158 at 163.

. The balance of Gatien Decuir’s quarter section, measuring approximately 2½ arpents by 40 arpents became the Darensbourg tract.

. LSA-C.C. art. 793 provides:
"When both parties rely on titles only, the boundary shall be fixed according to titles. When the parties trace their titles to a common author preference shall be given to the more ancient title.”

.Expert surveyor Laws testified: "This situation of bounds on this side of False River, all the sections in that area close to the rear.” (Tr. 128) That is patently incorrect according to the 1871 government survey which shows Section 51 with parallel lines and Sections 48 and 55 opening to the rear.
Laws later qualified his testimony to state that "most of those sections close to the rear in that side of False River, because the — it’s in the interior curve of ... False River.” (Tr. 129)

. Exhibit D-l.